UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFFREY KEPLAR | § § § | |
| Plaintiff | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| GOOGLE, LLC | § § | |
| Defendant | § § | JURY TRIAL DEMANDED |

COMPLAINT

Plaintiff, for his Complaint against Defendant, would show as follows:

Parties

1. Plaintiff is an individual.

2. Defendant is a limited liability corporation and may be served with summons and this Complaint through its registered agent for service of process in Texas, Corporation Service Company dba CSC-Lawyers Incorporated, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

Jurisdiction and Venue

3. The Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

Facts

5. Plaintiff is an individual 65 years of age born January 7, 1957 and became employed by Defendant as an enterprise sales manager in the financial services industry ("FSI") vertical, with Defendant's cloud sales organization. When he became employed by Defendant, Plaintiff had substantial computer-related enterprise sales management experience.

COMPLAINT – Page 1

6. Plaintiff's original superior was Bob Allision ("Allison"). Allision then became his peer and later, briefly, again, his temporary superior in January 2021. In February 2021, Allision, like Plaintiff, substantially over 40, was separated from active employment with Defendant even if he nominally retained as an employee through the end of 2021. A substantially younger female, Yolanda Piazza ("Piazza"), without significant enterprise sales experience or sales management experience equivalent to Allison or to Plaintiff, was hired in the position of superior to Allison in June 2020, but effectively replaced him when Allison ceased active employment, and Piazza hired another substantially younger female, Erin Williams ("Williams"), as another subordinate, without a male employees subordinate to Piazza being given any opportunity to obtain the position accorded to Williams.

7. In early 2021, Defendant hired an employee, Nigel Walsh ("Walsh"), not substantially over 40 and also without significant enterprise technology sales or sales management experience, and thus substantially younger than Plaintiff, as the superior of an individual sales director peer of Plaintiff's over insurance customer sales, Reed Overby ("Overby"), close in age to Plaintiff, without Overby ever being considered for the position accorded to Walsh. Overby soon resigned in light of the apparent age discrimination being practiced by Defendant against males substantially over 40, including against Allison, who had hired Overby. The hiring of Walsh as the superior of Overby even while Walsh lacked appropriate experience for the position he was accorded, was age discriminatory.

8. In late 2021, Plaintiff was similarly replaced in fact by a substantially younger female, Elizabeth Elkins ("Elkins"), who, like Walsh and Piazza, lacked significant enterprise technology sales or sales management experience. Elkins was nominally inserted within the FSI vertical sales organization as Plaintiff's superior, but Plaintiff was expected to train her in the

performance of his role, and Plaintiff did train her. Elkins did not contribute to Plaintiff's effort to make sales to the eight prospective customers in the FSI vertical sales organization Plaintiff was pursuing in 2020 and 2021. Notwithstanding, Ms. Elkins was promoted in December 2021 to a position not only over Plaintiff but over another director of sales in another vertical, the so-called banking vertical, and Elkins disclosed to Plaintiff at the time of her promotion that she did not seek the promotion and would not have sought it but for Plaintiff being responsible for so-called payment sales within the FSI vertical.

9. Within Defendant's cloud organization, other instances of apparent age discrimination have also occurred between 2020 and 2022 beyond those referred to in paragraphs 6, 7 and 8. For example, in the so-called telecommunications vertical, an individual substantially over 40, Jeff Perry ("Perry"), was terminated in 2022, and replaced by a substantially younger female, Andrea Austin ("Austin"). In September 2020, Teena Piccione ("Piccione"), like Piazza, a younger female with no significant enterprise technology sales or sales management experience equivalent to Perry, Allison, Overby, Plaintiff or David Ooley ("Ooley"), responsible for the telecommunications, media, entertainment and gaming ("TMEG") industries vertical sales for Defendant's cloud organization, was hired, in a position superior to Ooley, a male substantially over 40. Piccione thereby essentially replaced Ooley, performing his role while assigning him a subset of his former duties as director of sales for the gaming vertical within TMEG and thereby essentially demoting him. Perry was likewise essentially demoted by being assigned role as one of two directors of sales for the telecommunications vertical within TMEG.

10. Plaintiff made sales quota in 2019 and 2020, the first two years of his employment with Defendant, and received excellent reviews for those first two years of his

performance and was never subjected to performance counseling or discipline during employment with Defendant.

11. In 2019, 2020 and 2021, Plaintiff was given the highest possible rating in employee surveys of managers of Defendant, greater than 22% higher than the average scores for all managers at Defendant.

12. During Plaintiff's third year of employment with Defendant, he was subjected to unreasonable expectations of sales notwithstanding the long-term nature of the sales processes he was pursuing with respect to eight prospective customers in the FSI vertical sales organization, being large non-bank credit card and payment vendors, none with prior experience as customers of Defendant. Such sales processes sometimes did not result in a sale for 18 to 36 months (as recognized by Defendant itself, and as evidenced by Defendant's experience with similar entities). In fact, however, Defendant reached a $126 million contract with American Express in 2021 and a $46 million contract with FISERV in the first quarter of 2022. Further, another of Plaintiff's prospective customers, Mastercard, had originally been assigned to an employee of Defendant without prior experience with that customer or substantial experience at Defendant itself. Further, only two of Defendant's eight prospective customers in the FSI vertical met the criteria of 18 months of consistent coverage by the same account team at Defendant as of 2021 as reasonably required to consummate a sale given the long sales processes applicable to the types of sales to such customers. Plaintiff's achievement of $32 million in 2021 revenue (attributable to the American Express contract) against a $64 million 2021 quota, and the FISERV contract resulting from efforts in 2021, and sales efforts ongoing with the six additional prospective customers in the FSI vertical, was outstanding under the circumstances.

13. In November 2021, Piazza gave Plaintiff a "needs improvement" rating in his fifth semiannual performance review and told Plaintiff that she had been compelled to do so without identifying the individual or individuals who had so compelled her. Also, she volunteered to Plaintiff that his job was not in jeopardy as a result of the review even while Plaintiff did not ask her for such assurance.

14. Notwithstanding Plaintiff's "needs improvement" rating in his November 2021 semiannual performance review, Plaintiff was, in January 2022, accorded a stock grant distinct from the one made to Plaintiff upon his initial employment with Defendant, necessarily inconsistent with such a rating.

15. On April 8, 2022, Plaintiff was terminated by Defendant, and an effort was made by Defendant to mischaracterize his termination as other than involuntary to other employees in the FSI vertical sales organization. After Plaintiff's termination, Elkins performed Plaintiff's role on an interim basis, but Defendant then hired a substantially younger male employee, Ivan Hernandez, without significant enterprise technology sales experience or sales management experience to permanently replace Plaintiff. Also, Elkins has separated from Defendant.

16. By Plaintiff's termination, Plaintiff was denied the benefit of vesting over the next 13 months in additional stock of Defendant with a value of as much as $1 million.

## Claims

17. For his first cause of action, Plaintiff would show that he was subjected by Defendant to discrimination on the basis of age in violation of the Age Discrimination in Employment Act, and is entitled to recover his actual damages, liquidated damages, attorney's fees, prejudgment interest and costs of court.

18. For his second cause of action, subject only to receipt of a notice of right to file civil action from the Texas Workforce Commission, Plaintiff would show that he was subjected by Defendant to discrimination on the basis of age in violation of the Texas Labor Code, and is entitled to recover his actual damages, liquidated damages, attorney's fees, prejudgment interest and costs.

19. For his third cause of action, subject only to receipt of a notice of right to file suit from the Equal Employment Opportunity Commission, Plaintiff would show that he was subjected by Defendant to discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, and is entitled to recover his actual damages, punitive damages, attorney's fees, prejudgment interest and costs.

20. For his fourth cause of action, subject only to receipt of a notice of right to file civil action from the Texas Workforce Commission, Plaintiff would show that he was subjected by Defendant to discrimination on the basis of sex in violation of the Texas Labor Code, and is entitled to recover his actual damages, punitive damages, attorney's fees, prejudgment interest and costs.

21. Plaintiff demands a jury.

WHEREFORE, Plaintiff prays for the relief referred to in paragraphs 17 through 21 and all other relief to which he may be entitled.

Respectfully submitted,

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.
State Bar No. 08158100
reg@kilgorelaw.com
Kilgore & Kilgore, PLLC
3141 Hood Street, Suite 500
Dallas, Texas 75219
(214) 379-0843 Telephone
(214) 379-0840 Telecopy

ATTORNEY FOR PLAINTIFF