UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFFREY KEPLAR | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-cv-02281-B |
| | § | |
| GOOGLE, LLC | § | |
| | § | |
| Defendant | § | JURY TRIAL DEMANDED |

SECOND AMENDED COMPLAINT

Plaintiff, for his First Amended Complaint against Defendant, would show as follows:

Parties

1.      Plaintiff is an individual.

2.      Defendant has appeared.

Jurisdiction and Venue

3.      The Court has federal question subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 based on Plaintiff's claim under the Age Discrimination in Employment Act ("ADEA") and the Employee Retirement Income Security Act ("ERISA") and will have jurisdiction over Plaintiff's claim under Title VII of the Civil Rights Act of 1964 upon issuance of a notice of right to sue by the Equal Employment Opportunity Commission. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claim under Texas contract common law and will have jurisdiction over Plaintiff's claim under the Texas Labor Code upon issuance of a notice of right to file civil action by the Texas Workforce Commission.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

<u>Facts</u>

5.      Plaintiff is an individual 65 years of age born January 7, 1957 and, on July 1, 2019, became employed by Defendant as a Director, Key Accounts, in the financial services industry ("FSI") vertical, with Defendant's Google Cloud organization. When he became employed by Defendant, Plaintiff already had substantial sales education and training and substantial computer-related enterprise sales management experience, and acquired additional experience at Defendant.

6.      Plaintiff's original superior was Bob Allison ("Allison"). Allison then became his peer and later, briefly, again, his temporary superior in January 2021. In February 2021, Allison, like Plaintiff, substantially over 40, at or around age 59, was terminated from active employment with Defendant even if he was nominally retained as an employee through the end of 2021 performing minimal, if any, responsibilities. A substantially younger female, Yolanda Piazza ("Piazza"), at or around age 53, without significant enterprise sales experience or sales management experience equivalent to Allison or to Plaintiff, was hired in the position of superior to Allison in June 2020, but effectively replaced him when Allison ceased active employment, and Piazza hired another substantially younger female, Erin Williams ("Williams"), at or around age 45, as another subordinate, without considering two male employees subordinate to Piazza appropriately considered for that position, Russ Kole ("Kole") or Justin DeCastri ("DeCastri"). Also, Piazza subjected George Barnes ("Barnes"), an employee substantially over 40, to disparate treatment, in the form of harassing criticism of his handling of an account by comparison with other younger subordinates of Piazza, to the point that Barnes complained to Defendant's human resources function of such disparate treatment.

<u>SECOND AMENDED COMPLAINT</u> – Page 2

7.      In early 2021, Defendant hired an employee, Nigel Walsh ("Walsh"), not substantially over 40, at or around age 46, and also without significant enterprise technology sales or sales management experience, and thus substantially younger than Plaintiff, as the superior of an individual sales director peer of Plaintiff's over insurance customer sales, Reed Overby ("Overby"), close in age to Plaintiff, at or around age 55, without Overby ever being considered for the position accorded to Walsh. Overby soon resigned in disgust at apparent age discrimination being practiced by Defendant against males substantially over 40, including against him based on his replacement by Walsh, and against Allison based on his replacement by Piazza.

8.      In late 2021, Plaintiff was similarly replaced in fact by a substantially younger female, Elizabeth Elkins ("Elkins"), at or around age 51, who, like Walsh and Piazza, lacked significant enterprise technology sales or sales management experience. Elkins was nominally inserted within the FSI vertical sales organization as Plaintiff's superior, but Plaintiff was expected to train her in the performance of his role, and Plaintiff did train her. Elkins did not contribute to Plaintiff's effort to make sales to the eight prospective customers in the FSI vertical sales organization Plaintiff was pursuing in 2020 and 2021. Notwithstanding, Elkins was promoted in December 2021 to a position not only over Plaintiff but over another director of sales in another vertical, the so-called banking vertical, Roman Kochanowsky ("Kochanowsky"), a male substantially over the age of 40, at or around age 58, and Elkins disclosed to Plaintiff at the time of her promotion that she did not seek the promotion and would not have sought it but for Plaintiff being responsible for so-called payment sales within the FSI vertical. The position to which Elkins was promoted, over the FSI banking and payment sub-verticials, was created and filled by her without prior notice of the opportunity to Plaintiff so he could compete for it.

SECOND AMENDED COMPLAINT – Page 3

Subsequently, Kochanoswky had his performance rating changed by Elkins from continuing to meet expectations to needs improvement, and was demoted, by Elkins, notwithstanding the lack of justification for the downrating.

       9.     Within Defendant's Google Cloud organization, other instances of apparent age discrimination have also occurred between 2020 and 2022 beyond those referred to in paragraphs 6, 7 and 8. For example, in September 2020, Teena Piccione ("Piccione"), like Piazza, a younger, at or around age 54, female with no significant enterprise technology sales or sales management experience equivalent to that of Plaintiff or other older employees of Defendant, including David Ooley ("Ooley"), Jeff Perry ("Perry"), Allison and Overby, was hired, in a position superior to Ooley, within the telecommunications, media, entertainment and gaming ("TMEG") industries vertical sales for Defendant's Google Cloud organization, was hired, in the position superior to Ooley, a male substantially over 40, at or around age 61, Piccione thereby essentially replaced Ooley, performing his role over the TMEG vertical while assigning him responsibility only over the gaming sub-vertical within the TMEG vertical and thereby demoting him. Like, Ooley, Perry, an individual substantially over 40, at or around age 63, was likewise demoted by Piccione by being assigned a role as one of two directors of sales for the telecommunications sub-vertical within TMEG when he had previously been responsible for the entire telecommunications sub-vertical. Further, Perry was terminated in March 2022, and replaced by a substantially younger female, Andrea Austin ("Austin"), at or around age 53, despite substantially greater industry knowledge and sales experience than Austin.

       10.     Plaintiff made sales quota in 2019 and 2020, the first two years of his employment with Defendant, and received excellent reviews for those first two years of his

SECOND AMENDED COMPLAINT – Page 4

performance and was never subjected to performance counseling or discipline during employment with Defendant.

11.     In 2019, 2020 and 2021, Plaintiff was given the highest possible rating in employee surveys of managers of Defendant, greater than 22% higher than the average scores for all managers at Defendant.

12.     During Plaintiff's third year of employment with Defendant, he was subjected to unreasonable expectations of sales notwithstanding the long-term nature of the sales processes he was pursuing with respect to eight prospective customers in the FSI vertical sales organization, being large non-bank credit card and payment vendors, none with prior experience as customers of Defendant. Such sales processes sometimes did not result in a sale for 18 to 36 months (as recognized by Defendant itself, and as evidenced by Defendant's experience with similar entities). In fact, however, Defendant reached a $126 million contract with American Express in 2021 and a $46 million contract with FISERV in the first quarter of 2022. Further, another of Plaintiff's prospective customers, Mastercard, had originally been assigned to an employee of Defendant without prior experience with that customer or substantial experience at Defendant itself. Further, only two of Defendant's eight prospective customers in the FSI vertical met the criteria of 18 months of consistent coverage by the same account team at Defendant as of 2021 as reasonably required to consummate a sale given the long sales processes applicable to the types of sales to such customers. Plaintiff's achievement of $32 million in 2021 revenue (attributable to the American Express contract) against a $64 million 2021 quota, and the FISERV contract resulting from efforts in 2021, and sales efforts ongoing with the six additional prospective customers in the FSI vertical, was outstanding under the circumstances.

SECOND AMENDED COMPLAINT – Page 5

13.     In November 2021, Piazza gave Plaintiff a "needs improvement" rating in his fifth semiannual performance review and told Plaintiff that she had been compelled to do so without identifying the individual or individuals who had so compelled her. Also, she volunteered to Plaintiff that his job was not in jeopardy as a result of the review even while Plaintiff did not ask her for such assurance.

14.     Notwithstanding Plaintiff's "needs improvement" rating in his November 2021 semiannual performance review, Plaintiff was, in January 2022, accorded a stock grant distinct from the one made to Plaintiff upon his initial employment with Defendant, necessarily inconsistent with such a rating.

15.     On April 8, 2022, Plaintiff was involuntarily terminated by Defendant, and an effort was made by Defendant to mischaracterize his termination as other than involuntary to other employees in the FSI vertical sales organization. After Plaintiff's termination, Elkins performed Plaintiff's role on an interim basis, but Defendant then hired a substantially younger male employee, Ivan Fernandez, at or about age 47, without significant enterprise technology sales experience or sales management experience, to permanently replace Plaintiff. Also, Elkins has separated from Defendant.

16.     Plaintiff's termination was a product of age bias or sex bias, or both. On May 20, 2022, Plaintiff accordingly filed a charge of discrimination with the Equal Employment Opportunity Commission alleging sex and age discrimination in violation of the Age Discrimination in Employment Act, Title VII of the Civil Rights Acts of 1964 and the Texas Labor Code, a copy of which, and evidence of its filing, and notice to Defendant, is attached, and filed the Complaint initiating this civil action more than 60 days after May 20, 2022, on October 12, 2022.

SECOND AMENDED COMPLAINT – Page 6

17.     As of the beginning of 2019, Defendant maintained an enhanced level of benefits for certain of its employees within certain of its organizations, referred to as Level 8 employees. The benefits accorded to such employees included grants of stock under the Alphabet Inc. Amended and Restated 2021 Stock Plan ("2012 Stock Plan") and its replacement, the Alphabet, Inc. 2021 Stock Plan ("2021 Stock Plan") (the "Plans"), at a level significantly greater than those accorded to employees at lower levels of benefits. The greater benefits included monthly accrual of stock benefits under the Plans. No later than early 2019, Defendant recruited individuals into positions within certain of its operating divisions, including its Google Cloud organization, by offering Level 8 benefits to them. One of such individuals was Plaintiff, but others within Defendant's Google Cloud organization likewise were recruited on the basis of their being accorded Level 8 benefits. These included, beyond Plaintiff, Allison, Overby, Perry, Toby Velte ("Velte"), Michael Thomas ("Thomas") and Jenn Smetana ("Smetana")

18.     While employed by Defendant, Plaintiff was a participant in  the Plans.

19.     The Plans are governed by ERISA or, if not governed by ERISA, constitute contracts enforceable as such, with respect to the grant to employees of Defendant, and vesting in employees of Defendant, of stock of Defendant's parent. Specifically:

(a)     The Plans, to the extent governed by ERISA, are so governed because they are employee benefit plans within the meaning of ERISA or, whether or not they are employee welfare benefit plans under ERISA, they are employee benefit pension plans because they provide retirement income to employes or result in a deferral of income of employees. The Plans are employee benefit plans based on the very basic definition of an employee benefit plan under ERISA because they exist and have intended benefits, a class of beneficiaries, a source of financing, procedures for receiving benefits and an

ongoing administrative program to meet employer obligations. The Plans are ERISA employee benefit plans under that definition because the intended benefits include benefits of which stock benefits are only one example, the class of beneficiaries consists of employees entitled to participate in the Plans who are in fact granted stock or other stock-related rights pursuant to the Plans, the Plans financed by Defendant's parent as issuer of shares and a procedure for receiving benefits through stock grants and procedures for realizing upon such benefits does exist pursuant to the Plans.

(b)     The Plans state that their purpose is to encourage participants to continue in the service of Defendant, its parent and affiliates and to provide them a proprietary interest in pursuing the long-term growth, profitability and financial success of entities. The Plans provide for both cash-based and stock-based awards, and there are a limited number of shares of stock of Defendant's parent awardable under the Plans. The Plans provide for awards under the Plan of stock of Defendant's parent or cash to, among others, employees of Defendant, its parent or other subsidiaries of Defendant's parent with the stock necessarily issued by Defendant's parent and cash payable by the entity—Defendant's parent, Defendant or other subsidiaries of the parent—employing a particular participant.

(c)     The Plans provide a method of administration of the Plans as follows:

4.     <u>Administration of the Plan</u>

The Plan shall be administered by a Committee of the Board of Directors consisting of two or more persons, each of whom qualifies as a "non-employee director" (within the meaning of Rule 16b-3 promulgated under Section 16 of the Exchange Act), and as "independent" within the meaning of any applicable stock exchange listing rules or similar regulatory authority. The Committee shall, consistent with the terms of the Plan, from time to time designate those employees and consultants of the Company and members of the Board of Directors who shall be granted Incentive Awards under the Plan and the amount, type and other terms

and conditions of such Incentive Awards. All of the powers and responsibilities of the Committee under the Plan may be delegated by the Committee to any subcommittee thereof. In addition, the Committee may from time to time authorize a subcommittee consisting of one or more members of the Board of Directors (including members who are employees of the Company) or employees of the Company to grant Incentive Awards, subject to such restrictions and limitation as the Committee may specify and to requirements of Delaware General Corporation Law Section 157.

The Committee shall have full discretionary authority to administer the Plan, including discretionary authority to interpret and construe any and all provisions of the Plan and the terms of any Incentive Award (and any agreement evidencing the grant of any Incentive Award) granted thereunder and to adopt and amend from time to time such rules and regulations for the administration of the Plan as the Committee may deem necessary or appropriate. The Committee shall have the authority, in its discretion, to prescribe, amend and rescind rules and regulations relating to the Plan, including rules and regulations related to sub-plans established for the purpose of satisfying applicable foreign laws and/or qualifying for preferred tax treatment under applicable foreign tax laws. For purposes of clarity, the Committee may exercise all discretion granted to it under the Plan in a non-uniform manner among Participants.

Without limiting the generality of the foregoing paragraph, the Committee shall determine whether an authorized leave of absence, or absence in military or government service, shall constitute termination of employment, provided that a Participant who is an employee will not be deemed to cease employment in the case of any leave of absence approved by the Company. Unless the Committee provides otherwise in the agreement evidencing the grant of an Incentive Award, vesting of Incentive Awards granted hereunder will be suspended during any unpaid leave of absence and will resume on the date the Participant returns to work on a regular scheduled as determined by the Company, it being understood that no vesting credit will be awarded for the time vesting has been suspended during such leave of absence. For purposes of ISOs, no such leave may exceed ninety (90) days, unless reemployment upon expiration of such leave is guaranteed by statute or contract. If reemployment upon expiration of a leave of absence approved by the Company is not guaranteed, then three months following the 91st day of such leave of any such ISO held by the Participant will cease as to be treated as an ISO and will be treated for tax purposes as a non-qualified Option. The provisions of this paragraph shall be administered and interpreted in a manner that does not give rise to any tax under Section 409A of the Code.

The employment of a Participant with the Company shall be deemed to have terminated for all purposes of the Plan if such Participant is employed by or provides services to a Person that is a Subsidiary of the Company and such Person ceases to be a Subsidiary of the Company, unless the Committee determines otherwise. The Committee may, without limitation and in its discretion, in

connection with any such determination, provide for the accelerated vesting of any Incentive Award upon or after such cessation, subject to such terms and conditions as the Committee shall specify. The employment of the Participant with the Company shall not be deemed to have terminated for any such purpose of the Plan if such Participant is employed by a Person that is part of the Company, and such Participant's employment is subsequently transferred to any other Person that is part of the Company, unless to the extent the Committee specifies otherwise in writing in the instrument evidencing the grant of an Incentive Award or otherwise. A Participant who ceases to be an employee of the Company but continues, or simultaneously commences, services as a consultant or director of the Company shall not be deemed to have had a termination of employment for purposes of the Plan, unless Committee determines otherwise. Decisions of the Committee shall be final, binding and conclusive on all parties. All discretion granted to the Committee pursuant to this paragraph must be exercised in a manner that would not cause any tax to become due under Section 409A of the Code.

On or after the date of an Incentive Award under the Plan, the Committee may (i) accelerate the date on which any Incentive Award becomes vested, exercisable or transferable, as the case may be, (ii) extend the term of such Incentive Award, including, without limitation, extending the period following a termination of a Participant's employment during which any such Incentive Award may remain outstanding, (iii) waive any conditions to the vesting, exercisability or transferability, as the case may be, of any such Incentive Award, or (iv) provide for the payment of dividends or dividend equivalents with respect to any such Incentive Award; provided, that the Committee shall not have any such authority to the extent that the grant of such authority would cause any such tax to become due under Section 409A of the Code.

The Company shall pay for any amount payable with respect to an Incentive Award in accordance with the terms of such Incentive Award, provided that the Committee may, in its discretion, defer the payment of amounts payable with respect to an Incentive Award subject to and in accordance with the terms of a Deferred Compensation Plan.

(d)     The Plans, to the extent deemed not governed by ERISA, are governed by state law, necessarily state contract law such that a claim related to benefits under the Plans would be a claim for breach of contract based on the forfeiture of stock to Plaintiff based solely on his no longer being employed by Defendant in violation of Texas contract law and Texas anti-forfeiture law, or comparable law of New York law, if it applies. See e.g., Donaldson v. Dig. Gen. Sys., 168 S.W.3d 909, 916 (Tex. App.—Dallas 2005) ("[I]f

one party prevents the other from performing a condition precedent, then the condition is considered as fulfilled" (internal quotation marks and citation omitted); D&M Specialties, Inc. v. Apache Creek Props., L.C. 2014 WL 12493290, *5 (Tex. W.D. Aug. 21, 2014) (citing Houston Cty. v. Leo L. Landauer & Assocs., Inc., 424 S.W.2d 458, 464 (Tex. Civ. App.—Tyler 1968)); Clear Lake City Water Auth. v. Friendswood Dev. Co., Ltd., 344 S.W.3d 514, 519 (Tex. App.—Houston [14th Dist.] 2011) (recognizing that "a party who prevents or makes impossible the occurrence of a condition precedent upon which its liability under a contract depends cannot rely on the nonoccurrence to escape liability" (internal quotation marks and citation omitted); Sellers v. Mineral Technologies, Inc., 743 Fed. App. 272, 277-78 (5th Cir. 2018) (following cited cases), Crane v. Rave Restaurant Group, Inc., 552 F.Supp.3d 692, 701-702 (E. D. Tex. 2021) (same); Hill v. Concho Resources, Inc., 2021 WL 7541418, *6 (W.D. Tex. 2021) (same).

20.     As of 2021, benefits under the Plans for Level 8 employees were extremely valuable to such employees based on the per share value of the stock of Defendant's parent, as much as $3,000 per share. For only the five identified employees, including Plaintiff, within Defendant's Google Cloud organization recruited on the basis of being accorded Level 8 benefits in 2019 and 2020, the total value of stock in which they were entitled to vest as holders of Level 8 benefits after their forced separation (in the case of Overby) or involuntary termination (in all other cases) approached or exceeded $1,000,000 in each case. Most, if not all, Level 8 employees recruited by Defendant within or outside its Google Cloud organization in and after January 1, 2019 were substantially over the age of 40. In 2021 and 2022, Defendant forced the separation of, or involuntarily terminated, each of Plaintiff, Allison, Overby, Perry, Velte, Thomas and Smetana. Defendant, in its decisions over which of the employees in its Google Cloud

SECOND AMENDED COMPLAINT – Page 11

organization to terminate during 2020 and 2021, was aware of the value of stock benefits held by Plaintiff, Allison, Overby, Perry, Velte, Thomas and Smetana, and determined to maximize the financial savings represented by unvested stock benefits under the Plans to be realized from the termination or other separation of such employees in the Google Cloud organization, and on information and belief, did the same in considering the termination, or separation, of Level 8 employees of certain of its other organizations. The intent and effect of Defendant's termination of Level 8 employees in its Google Cloud organization, and such other organizations, in 2021 and 2022, was to deny Level 8 employees the ability to maximize their Level 8 stock benefits.

21.      By his termination, Plaintiff was denied the benefit of vesting under the Plans over the  approximately 15 months following the termination in additional stock of Defendant with a value of as much as $1 million, just Allison, Overby, Perry, Velte, Thomas and Smetana, when terminated or otherwise separated, were denied the benefit of vesting under the Plans in additional stock of Defendant with significant value. Defendant terminated Plaintiff with specific intent to deny Plaintiff the benefit of vesting in additional stock pursuant to the Plans, just as it terminated or forced the separation of Overby. Perry, Velte, Thomas and Smetana with such intent. Their terminations were considered to have that effect under the Plans, the amount of benefits in which they were entitled to vest post-termination equaled or exceeded $1,000,000, and Plaintiff was compelled to acknowledge the forfeiture of unvested stock if he desired any severance benefits. Defendant thereby terminated Plaintiff with a specific intent and purpose, whether or not the sole reason, of interfering with his attainment of benefits under the Plans in which he would have vested absent the termination.

<u>Claims</u>

22.    For his first cause of action, Plaintiff would show that he was subjected by Defendant to discrimination on the basis of age in violation of the Age Discrimination in Employment Act, and is entitled to recover his actual damages, liquidated damages, attorney's fees, prejudgment interest and costs of court.

23.    For his second cause of action, subject only to receipt of a notice of right to sue from the Equal Employment Opportunity Commission , Plaintiff would show that he was subjected by Defendant to discrimination on the basis of sex violation of Title VII of  the Civil Rights Act of 1964 and is entitled to recover his actual damages, compensatory damages and punitive damages, attorney's fees, prejudgment interest and costs.

24.    For his third cause of action, subject only to receipt of a notice of right to file civil action from the Texas Workforce Commission, Plaintiff would show that he was subjected by Defendant to discrimination on the basis of age in violation of the Texas Labor Code, and is entitled to recover his actual damages, compensatory and punitive damages, attorney's fees, prejudgment interest and costs.

25.    For his fourth cause of action, subject only to receipt of a notice of right to file civil action from the Texas Workforce Commission, Plaintiff would show that he was subjected by Defendant to discrimination on the basis of sex in violation of the Texas Labor Code, and is entitled to recover his actual damages, punitive damages, attorney's fees, prejudgment interest and costs.

26.    For his fifth cause of action, Plaintiff would show that Defendant violated Section 1140 of the Employment Retirement Income Security Act and is entitled to recover his actual damages in the form not only of backpay and front pay but the amount of benefits denied in

terms of the value of the stock awarded to him which it purportedly forfeited, other actual damages, attorney's fees, prejudgment interest and costs.

27.     For his sixth cause of action, in alternative to his fifth cause of action, Plaintiff would show that Defendant breached a contract and is entitled to recover his actual damages, attorney's fees, prejudgment interest and costs.

28.     Plaintiff demands a jury.

WHEREFORE, Plaintiff prays for the relief referred to in paragraphs 18 through 24 and all other relief to which he may be entitled.

Respectfully submitted,

/s/ Robert E. Goodman, Jr.
Robert E. Goodman, Jr.
State Bar No. 08158100
reg@kilgorelaw.com
Kilgore & Kilgore, PLLC
3141 Hood Street, Suite 500
Dallas, Texas 75219
(214) 379-0843 Telephone
(214) 379-0840 Telecopy

ATTORNEY FOR PLAINTIFF

SECOND AMENDED COMPLAINT – Page 14

<u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the above and foregoing was forwarded to counsel of record via the Court's electronic filing system and/or via email on the 22nd day of February 2023.

Buena Vista Lyons
Texas Bar No. 00797630
David R. Anderson
Texas Bar No. 24128388
Ford Harrison LLP
1601 Elm Street, Suite 4450
Dallas, Texas 75201
Telephone: (214) 256-4700
Facsimile: (214) 256-4701
vlyons@fordharrison.com
danderson@fordharrison.com

<u>/s/ Robert E. Goodman, Jr.</u>
Robert E. Goodman, Jr.