UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JEFFREY KEPLAR, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:22-CV-2281-B |
| § | |
| GOOGLE, LLC, § | |
| § | |
| Defendant. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Google, LLC ("Google")'s Motion to Dismiss (Doc. 37) Plaintiff Jeffrey Keplar's Second Amended Complaint (Doc. 31). For the following reasons, the Court **GRANTS in part** and **DENIES in part** Google's Motion to Dismiss. Specifically, the Court **GRANTS** the Motion as to Keplar's claims for sex discrimination and breach of contract but **DENIES** the Motion as to Keplar's claims for age discrimination. The Court **DISMISSES** Keplar's sex discrimination and breach of contract claims **WITH PREJUDICE**.

## I.

## BACKGROUND [1]

*A.    Factual Background*

Keplar was hired by Google on July 1, 2019—Keplar was 62 years old when he began working for Google. Doc. 31, Second Am. Compl., ¶ 5. Keplar was a Director for Google Cloud. *Id.* Keplar had "substantial sales education and training and substantial computer-related enterprise sales management experience." *Id.*

---

[1] The Court derives the factual background from Keplar's Second Amended Complaint (Doc. 31).

In late 2021, Google hired Elizabeth Elkins, a woman around 51 years old, who Keplar alleges "lacked significant enterprise technology sales or sales management experience." *Id.* ¶ 8. While Elkins was Keplar's superior, Google required Keplar to train Elkins for her role. *Id.* Elkins was then further promoted in December 2021 to a position Google created for Elkins without providing Keplar notice of the position "so he could compete for it." *Id.* ¶¶ 12–13.

Keplar met his sales quota in 2019 and 2020, while also receiving excellent performance reviews his first two years at Google. *Id.* ¶ 10. He then struggled to meet his sales quotas in 2021, and ultimately received a "needs improvement" rating from his supervisor in November 2021. *Id.* ¶¶ 12–13. Google ultimately fired Keplar on April 8, 2022. *Id.* ¶ 15. Keplar's supervisor, Elkins, temporarily performed Keplar's duties until Google hired Keplar's permanent replacement—Ivan Fernandez—a man around 47 years old. *Id.*

Bob Allison, a man around 59 years old, was Keplar's original supervisor at Google, until Google terminated Allison in February 2021. *Id.* ¶ 6. Google then replaced Allison with a woman around 53 years old. *Id.* In addition to Keplar and Allison's terminations, Keplar also alleges that Google discriminated against two more men above the age of 60. *Id.* ¶ 9. He alleges that Jeff Perry, a man around 63 years old, was terminated by Google and replaced by a woman around 53 years old. *Id.* Additionally, Keplar alleges Google demoted David Ooley, a man roughly 61 years old, and replaced him with a woman around 54 years old. *Id.* Keplar alleges that both of these men had more industry experience and knowledge than the women who replaced them. *Id.*

Lastly, while at Google, Keplar participated in a company stock-benefits plan that he refers to as simply "the Plans." *Id.* ¶ 17. The Plans provided both "cash-based and stock-based awards," which the Plans referred to as "Incentive Awards." *Id.* ¶ 19(b). These Incentive Awards were given

to various Google employees subject to a committee's discretion. *Id.* This committee, which administered the Plans, decided which employees received Incentive Awards and "the amount, type and other terms and conditions of such Incentive Awards." *Id.* ¶ 19(c)(4). As part of his compensation, Keplar received a stock grant in January 2022 that was distinct from the grant he received when Google hired him. *Id.* ¶ 14.

Keplar asserts six claims in his Second Amended Complaint: (1) that he was subjected to age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) that he was subjected to sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (3) that he was subjected to age discrimination in violation of Chapter 21 of the Texas Labor Code ("TLC"); (4) that he was subjected to sex discrimination in violation of Chapter 21 of the TLC; (5) that Google violated Section 1140 of the Employment Retirement Income Security Act ("ERISA"); and (6) that Google breached a contract regarding the stock grants. *Id.* ¶¶ 22–27.

B.   *Procedural History*

Keplar filed his original Complaint on October 12, 2022. Doc. 1, Compl. Thereafter, Google filed its first Motion to Dismiss for failure to state a claim on December 7, 2022. Doc. 9, Mot. Dismiss. In response, Keplar filed his First Amended Complaint, which rendered Google's first Motion to Dismiss moot. *See* Doc. 12, Am. Compl.; Doc. 14, Order. Google then moved to dismiss Keplar's First Amended Complaint. Doc. 19, Mot. Dismiss. Keplar then sought leave to file a Second Amended Complaint, which the Court granted—as a result, the Court dismissed Google's Second Motion to Dismiss as moot. Doc. 31, Second Am. Compl.; Doc. 32, Order. After Keplar filed his Second Amended Complaint, Google filed its third 12(b)(6) Motion to Dismiss, which the Court considers below. *See* Doc. 37, Mot. Dismiss.

## II.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) authorizes a court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "the Court must accept all well-pleaded facts as true, and . . . view them in the light most favorable to the plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (internal quotations omitted). But the "court will not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999) (citation omitted).

To survive a motion to dismiss, plaintiffs must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). When well-pleaded facts fail to meet this standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (quotation marks and alterations omitted).

## III.

## ANALYSIS

Google's third Motion to Dismiss argues that Keplar's age discrimination, sex discrimination, and breach of contract claims should be dismissed for failing to state a claim. Doc. 37, Def's Mot. Dismiss, 10. The Court finds that Keplar has not stated a claim for sex discrimination or breach of contract. However, the Court concludes he has stated a claim for age discrimination.

A.  *Keplar Has Failed to State a Claim for Sex Discrimination*

Keplar brings sex discrimination claims under both Title VII and Chapter 21 of the TLC. Doc. 31, Second Am. Compl., ¶¶ 23, 25. Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Likewise, Chapter 21 of the TLC prohibits employers from "discharging an individual" because of their sex. TEX. LAB. CODE § 21.051(1). The Supreme Court of Texas construes the TLC "to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005). Therefore, the Court will analyze the federal and state sex discrimination causes of action together. *See Newbury v. City of Windcrest*, 991 F.3d 672, 675, 679 (5th Cir. 2021) (analyzing sex discrimination claims under both Title VII and Chapter 21 of the TLC using only the Title VII framework); *see Hobbs v. Ketera Techs., Inc.*, 865 F. Supp. 2d 719, 726 (N.D. Tex. 2012) (Lindsay, J.) ("[t]he court determines the same standard applies to discrimination claims under Title VII and [Texas law].").

Under Title VII, to state a prima facie case for sex discrimination, plaintiffs must establish the following elements: (1) they are a member of a protected class; (2) they are qualified for the

position; (3) they suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007), *abrogated on other grounds by Hamilton v. Dallas Cnty.*, 79 4th 494 (5th Cir. 2023). Plaintiffs establish the fourth element of their prima facie case—the similarly situated prong—by identifying a comparator, who is an employee outside of the plaintiffs' protected class, that the employer treated more favorably than the plaintiffs in "nearly identical circumstances." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

Google argues that Keplar's Second Amended Complaint should be dismissed because he failed to plead a prima facie case for sex discrimination by not identifying a comparator. Doc. 37, Mot. Dismiss, 4. Keplar, in response, contends that the "nearly identical circumstances" standard from *Lee* only applies in cases involving disparate discipline, which he claims is not at issue here. Doc. 39, Resp., 4. Instead, Keplar argues, the fourth element of a prima facie case for sex discrimination simply requires a showing of "substantial similarity." *Id.* at 5 n.4.

However, neither party addressed the correct issue at the motion to dismiss stage. The Fifth Circuit has held "[a] district court . . . errs by requiring a showing of each prong of the prima facie test for disparate treatment at the pleading stage." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (internal quotations omitted). Rather, a plaintiff need only "'plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make their case plausible.'" *Id.* (emphasis in original) (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)). Disparate treatment claims have two ultimate elements the plaintiff must plead to survive a motion to dismiss: (1) that the plaintiff suffered an adverse employment action (2) because of their protected status. *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013). Plaintiffs establish these elements

when the facts alleged in their complaints "nudge [their] claims across the line from conceivable to plausible." *Cicalese*, 924 F.3d at 768 (quoting *Twombly*, 550 U.S. at 547)) (further citation omitted).

While a court cannot require plaintiffs prove their prima facie case at the motion to dismiss stage, courts *can* reference the prima facie case to help determine "whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim" when a plaintiff's claim relies on circumstantial evidence. *Cicalese*, 924 F.3d at 767. But the Court will not conduct "a rigorous factual or evidentiary analysis . . . in response to a motion to dismiss." *Id.*

In *Cicalese*, the Fifth Circuit held that Italian plaintiffs pled sufficient facts to survive a 12(b)(6) motion to dismiss. *Id.* There, the plaintiffs were Italian professors who alleged that their supervisors made several derogatory comments regarding Italians, including that "[y]ou should go back to Italy" and that stupidity was "an Italian thing." *Id.* at 764–65 (internal quotations omitted). The Court held the plaintiffs presented enough facts to make the claim that the adverse employment actions "were motivated by anti-Italian bias" plausible but acknowledged that it was "a close call." *Id.* at 768.

While plaintiffs need not identify a comparator at the pleading stage, their complaint must nevertheless allow a reasonable inference of discrimination. For example, the Fifth Circuit held in *Olivarez v. T-Mobile USA, Inc.*, that a transgender employee did not plead sufficient facts to make his gender identity discrimination claim plausible. 997 F.3d 595, 600 (5th Cir. 2021). There, the plaintiff failed to plead any facts that would create "a reasonable inference that T-Mobile terminated Olivarez because of gender identity." *Id.* Additionally, the plaintiff did not allege any facts regarding a comparator that suggested the defendant treated any similarly situated employees outside the plaintiff's protected class differently. *Id.*

Thus, the relevant inquiry is whether Keplar has alleged facts that plausibly show Google fired him because of his sex. The Court concludes that Keplar has not done so. The only fact in the pleadings regarding sex discrimination that directly involves Keplar is his allegation that Google required him to train Elizabeth Elkins. Doc. 31, Second Am. Compl., ¶ 8. Keplar argues that being required to train a female employee is circumstantial evidence of sex discrimination, yet he provides no support for this assertion. *See* Doc. 39, Resp., 6. Keplar also argues that he was replaced by a woman because Elkins temporarily performed his responsibilities. Doc. 39, Resp., 6 n.5. However, Keplar indicates that Google ultimately replaced him with a man. Doc. 31, Second Am. Compl., ¶ 15. These allegations do not make it plausible that Google fired Keplar because of his sex. Nor has Keplar alleged any facts suggesting that his supervisors had any bias towards men in a manner similar to that alleged in *Cicalese*. *See* 924 F.3d at 764–65. For example, Keplar did not allege that his supervisors made derogatory comments regarding his protected characteristic. *See id.* (noting it was "a close call" whether it was plausible the adverse employment actions were because of anti-Italian bias). Without alleging any similar facts, Keplar has failed to meet his burden to survive a motion to dismiss.

Keplar also argues his Second Amended Complaint shows Google has a pattern of replacing male employees with female employees. Doc. 39, Resp., 5 n.4. For example, Keplar's original supervisor, Bob Allison, was fired and replaced by a woman. Doc. 31, Second Am. Compl., ¶ 6. Jeff Perry, a man around 63 years old, and David Ooley, a man around 61 years old, were both replaced by women around 53 or 54 years old. *Id.* ¶ 9. These facts, however, fail to make it plausible that Google terminated *Keplar* because of his sex. These facts are unrelated to his termination because they fail to show he was part of a larger pattern. Unlike Perry, Allison, and Ooley, Google did not

hire a female employee to replace Keplar. Doc. 31, Second Am. Compl., ¶ 15; Doc. 39, Resp., 8 n.6. Keplar was replaced by a man; under these circumstances, allegations that other employees were replaced by women do not, by themselves, make it plausible that Keplar was fired because he was a man. Additionally, Keplar does not allege any facts suggesting that Google fired these individuals because they were men. Simply replacing male employees with female employees (or vice versa) does not move Keplar's sex discrimination claim from conceivable to plausible. *See Cicalese*, 924 F.3d at 767 (noting that the adverse employment action occurred because of the plaintiff's protected status). Notably, Keplar refers to Perry and Ooley as two examples of "other instances of apparent age discrimination" in his Second Amended Complaint, and offers no facts, other than the sex of each person involved, to suggest Perry and Ooley were replaced because they were men. Doc. 31, Second Am. Compl., ¶ 9.

Alternatively, Keplar has not sufficiently pled his sex discrimination claim by identifying any comparators that Google treated differently than him. As discussed above, courts can reference the prima facie case to help determine whether a plaintiff pleaded the ultimate elements of a claim. *See Cicalese*, 924 F.3d at 767. Here, Keplar would eventually be required to prove that Google treated him "less favorably than others outside of his protected class." *See Olivarez*, 997 F.3d at 600 (quotation and emphasis omitted). Keplar has nonetheless failed to identify *anyone* outside of his protected class who is similarly situated to him or plead facts that suggest a comparator exists. Keplar has not pled any facts suggesting other female employees at his level in Google failed to meet their sales quotas or had similar negative performance reviews, let alone that any such individuals were not fired. Thus, Keplar has likewise failed to state a claim using this theory.

While a plaintiff need not prove their prima facie case for disparate treatment at the motion to dismiss stage, they do need to plead facts that make it plausible they suffered the adverse employment action because of their sex. *Cicalese*, 924 F.3d at 766–67. The facts offered by Keplar fail to accomplish this. For these reasons, the Court finds that Keplar has failed to state a claim and grants the motion to dismiss his sex discrimination claims.

B.      *Keplar Has Failed to State a Claim for Breach of Contract*

Google also argues that Keplar's state law breach of contract claim should be dismissed for failure to state a claim. Doc. 37, Mot. Dismiss, 7. As part of Keplar's employment agreement with Google, he participated in the Plans, which provided benefits, including stock grants, to Google's employees. Doc. 31, Second Am. Compl., ¶ 17. Keplar's only argument supporting his breach of contract claim is that Google prevented him from fulfilling a condition precedent by terminating him—this means, Keplar contends, that he is entitled to the stock grants that he would have received had Google not terminated his employment. *See* Doc. 31, Second Am. Compl., ¶ 19(d); Doc. 39, Resp., 11–12. Therefore, for the breach of contract claim to survive the motion to dismiss, Keplar must plausibly plead that his employment agreement had a condition precedent. *See Twombly*, 550 U.S. at 556. The Court finds that Keplar has failed to do so.

"A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement." *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 270 (Tex. 2021) (quotation omitted). "A condition precedent to an obligation to perform . . . must occur before there is a right to immediate performance and before there is a breach of contractual duty." *Id.* (quotation omitted). Texas law generally disfavors recognizing conditions precedent in contractual provisions due to their harshness. *Criswell v. Eur. Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948

(Tex. 1990). Examples of phrases indicating a disputed contract contains a condition precedent include "if," "provided," and "on condition that." *Criswell*, 792 S.W.2d at 948.

Ultimately, the terms of the Plans do not create any underlying obligation regarding stock grants had Keplar remained employed by Google. The terms of the Plans give the committee administering them significant discretion when deciding who receives benefits. *See* Doc. 31, Second Am. Compl., ¶ 19(c)(4). In other words, Keplar was not guaranteed any stock or other type of grant had he remained employed at Google. Because the Plans did not create any underlying obligation, Keplar cannot support his breach of contract claim. *See Allstate*, 627 S.W.3d at 270.

However, even if the Plans created an underlying obligation, the Court would still find that there was not a condition precedent. As discussed above, Keplar's breach of contract claim relies on the theory that Google prevented him from fulfilling a condition precedent by terminating him. *See* Doc. 31, Second Am. Compl., ¶ 19(d) ("a claim for breach of contract based on the forfeiture of stock to Plaintiff based solely on his no longer being employed by Defendant"). Keplar fails to point to any language in "the Plans" that would create the asserted condition precedent. Because the only contractual language Keplar references in the Second Amended Complaint was from the terms governing the Plans, the Court will look to these terms to decide if there was a condition precedent.

The Plans do not include any conditional language such as "if," "provided," or "on condition that." *See id.* ¶ 19(c)(4). Instead, it simply says that the committee in charge of administering the Plans "shall . . . from time to time, designate those employes and consultants of the Company . . . who shall be granted Incentive Awards under the Plan and the amount, type and other terms and conditions of such Incentive Awards." *Id.* These discretionary terms are in stark contrast with the

"if," "provided," or "on condition that" language provided in *Criswell* and fail to create a condition precedent. *See* 792 S.W.2d at 948.

Because Keplar fails to allege that the Plans contain contractual language creating an underlying obligation or the necessary conditional language to support finding a condition precedent, the Court concludes Keplar has failed to state a breach of contract claim upon which relief can be granted. *See Criswell*, 792 S.W.2d at 948.

C.     *Keplar Has Stated a Claim for Age Discrimination*

Lastly, Keplar brings age discrimination claims under both the ADEA and Chapter 21 of the TLC. Doc. 31, Second Am. Compl., ¶¶ 22, 24. The ADEA makes it "unlawful for an employer . . . [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, the TLC makes it unlawful to "discharge[] an individual" because of their age. TEX. LAB. CODE § 21.051(1). Because of the similarities between the two statutes, the Court will treat both causes of action together for their prima facie cases. *See King v. Stevenson Beer Distrib. Co.*, 11 F. Supp. 3d 772, 787 (S.D. Tex. Mar. 27, 2014) ("The requirements for establishing a *prima facie* discrimination claim under [Texas law] mirror those of the ADEA.") (emphasis in original) (citation omitted); *see also Norsworthy v. Houston Indep. Sch. Dist.*, 70 F.4th 332, 337 (5th Cir. 2023) (listing the same elements for a prima facie case of age discrimination under both the ADEA and Chapter 21 of the TLC).

To establish a prima facie case of age discrimination under the ADEA, a plaintiff must show: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time he suffered the adverse employment action; and (4) he was either (i) replaced by someone outside the protected class, (ii) replaced by someone younger, or (iii) otherwise discharged

because of his age." *Goudeau v. Nat'l Oilwell Varco, LP*, 793 F.3d 470, 474 (5th Cir. 2015) (quotation omitted).

Keplar pleaded sufficient facts on each element of his prima facie case for age discrimination. *See Cicalese*, 924 F.3d at 766 (quotation omitted). First, Keplar suffered an adverse employment action because Google fired him. *See McCoy v. City of Shreveport*, 492 F.3d 551, 559 (noting that discharging an employee is an adverse employment action). Second, Keplar pleaded sufficient facts to make it plausible that he was qualified for the position. He had significant sales and management experience before working at Google. Doc. 31, Second Am. Compl., ¶ 5. Keplar also received strong performance evaluations and met his sales quotas his first two years at Google. *Id.* Third, Keplar pled sufficient facts establishing he was within a protected class under the ADEA when he was fired. The ADEA prohibits discrimination against anyone, on the basis of age, who is more than 40 years old. 29 U.S.C. § 631(a)(1). He has alleged he was 64 years old when Google fired him. *See id.* ¶¶ 5, 15.

Fourth, Keplar alleged he was replaced by someone younger than him. *See Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 313 (5th Cir. 2004). The Supreme Court has said "an inference [of age discrimination] cannot be drawn from the replacement of one worker with another worker insignificantly younger." *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996). Instead, the replacement must be "substantially younger than the plaintiff" to support an inference of age discrimination. *Id.* Keplar alleges he was replaced by a 47-year-old man. Doc. 31, Second Am. Compl., ¶ 14. Keplar was around 64 years old when Google terminated him. *See id.* ¶¶ 5, 15. So, Keplar alleged that his replacement was 17 years younger than him, which is sufficient to establish he was replaced by someone substantially younger than him. Doc. 31, Second Am. Compl., ¶¶ 5, 14–15; *see Rachid v. Jack In The Box*, 376 F.3d 305, 313 (5th Cir. 2004) (noting, without deciding,

that an age difference of five years presents a close question of whether a replacement is "substantially younger"); *see Young v. Harris Health Care, Inc.*, 226 F.3d 643, at *3 (5th Cir. 2000) (unpublished) (determining that ten years was enough of an age difference to support a "substantially younger" finding); *see Irvin v. Ascension Par. Sch. Bd.*, No. CV 15-518-JWD-EWD, 2017 WL 354854, at *1 (M.D. La. Jan. 24, 2017) (finding that "the eight and one quarter year difference between Plaintiff and Yates satisfies [the substantially younger] standard."). Therefore, Keplar pleaded sufficient facts to establish all four elements of his prima facie case for age discrimination.

Google argues that Keplar "simply [made] out a formulaic recitation of the elements of his age discrimination claim." Doc. 42, Reply, 8. However, Keplar did not simply recite the elements of an age discrimination claim—he pled specific facts that established each element of his prima facie case, which is more than what is required at the pleadings stage. *See Cicalese*, 924 F.3d at 766. Keplar only needs to plead sufficient facts to make his age discrimination claims plausible—he has met this requirement. *See Haskett v. T.S. Dudley Land Co.*, 648 F. App'x 492, 495–97 (5th Cir. 2016) (unpublished) (vacating the district court dismissing the plaintiff's ADEA claim because the plaintiff stated a prima facie case for age discrimination against the defendant).

Because Keplar has more than met his pleading requirements for his age discrimination claims under the ADEA and the TLC, the Court denies Google's Motion to Dismiss Keplar's age discrimination claims.

D.     *The Court Will Not Grant Keplar Leave to Amend*

"[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains*

*Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). District courts give plaintiffs leave to amend their complaints "when justice so requires." Fed. R. Civ. P. 15(a)(2). This liberal standard, however, is "tempered by the necessary power of a district court to manage a case." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

When deciding whether to give parties leave to amend their complaints, district courts consider the following factors: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (quotation and emphasis omitted). Granting leave to amend a complaint is futile if "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

While Keplar has not requested leave to amend his complaint, the Court will nevertheless consider whether to grant him leave to do so. Keplar has had three opportunities to state a claim for sex discrimination, and he has had two opportunities to state a claim for breach of contract. While the Court did not address whether Keplar's earlier complaints contained sufficient facts to survive a motion to dismiss, Keplar did receive notice of potential deficiencies from Google's first two motions to dismiss. Despite receiving notice of potential deficiencies and having multiple opportunities to amend his complaint, he still was unable to state a claim for sex discrimination and breach of contract. The Court, therefore, concludes that any further amendments would also fail to state a claim. For this reason, the Court determines it would be futile to allow him to amend his complaint for a third time. Therefore, the Court dismisses these claims with prejudice.

IV.

CONCLUSION

For the reasons explained above, the Court **GRANTS in part** and **DENIES in part** Google's Motion to Dismiss. Specifically, the Court **DENIES** the Motion as to Keplar's claims for age discrimination. The Court **GRANTS** the Motion as to Keplar's claims for sex discrimination and breach of contract. Keplar's sex discrimination claim under Title VII, his sex discrimination claim under Chapter 21 of the TLC, and his breach of contract claim are **DISMISSED WITH PREJUDICE.**

**SO ORDERED**.

**SIGNED: November 7, 2023**.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE