IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JEFFREY KEPLAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:22-cv-2281-B |
| | § | |
| GOOGLE, LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER ON THE PARTIES' CROSS-MOTIONS FOR SANCTIONS

Plaintiff Jeffrey Keplar filed a Motion to Compel. *See* Dkt. No. 66.

Keplar asked the Court (1) to order the deposition of Phil Moyer, the VP of Global AI Business and Solutions of Defendant Google, LLC's Google Cloud organization, and (2) to order the deposition of one or more of Google's corporate representatives under Federal Rule of Civil Procedure 30(b)(6) to address (a), as relevant to Plaintiff's age discrimination claim, the ages, qualifications, and circumstances of separation, reduction in scope of duties, demotion, or replacement of employees of Google employed concurrently with Keplar in the Google Cloud sales organization of which Keplar was a part and (b), as relevant to Plaintiff's ERISA claim, the identity and circumstances of separation, if any, of so-called Level 8 employees of Google employed concurrently with Keplar in the Google Cloud sales organization along with Keplar. *See* Dkt. No. 76 (summarizing Keplar's requested relief on the Motion to Compel).

-1-

After hearing oral argument from Keplar's counsel and Google's counsel, the Court granted in part and denied in part that motion. *See* Dkt. No. 76.

Keplar later filed an Emergency Motion to Enforce Order on Motion to Compel and Extend Discovery Period as Necessary, and to Compel Responses to Interrogatories, Requests for Admission and Document Requests. *See* Dkt. No. 79.

But the parties then filed a Joint Notice, reporting on an agreement that they reached regarding the disputes raised in the emergency motion and providing "as follows:

- The deposition of Philip Moyer shall take place remotely on February 14, 2024, beginning at 10:00 a.m. CT;
- The deposition of Google's Corporate Deponent shall take place remotely on February 15, 2024 beginning at 1:30 p.m. CT; and
- In advance of Google's Corporate Deponent deposition, Google will supplement to the extent necessary and consistent with Magistrate Judge Horan's January 9, 2024 Order [DKT. 76] its responses to Plaintiff's First Interrogatories, Requests for Admission and Document Requests and will provide responsive documents to the extent necessary and consistent with Magistrate Judge Horan's January 9, 2024 Order [DKT. 76]."

Dkt. No. 83 at 1. And the Joint Notice reports that "the parties further agree that Court involvement regarding [the emergency motion] is unnecessary at this time." *Id.* at 2.

But the parties then contacted the Court on February 14, 2024 regarding a dispute related to the scope of Phil Moyer's deposition testimony that the Court had previously ordered in granting in part and denying in part Keplar's Motion to Compel. *See* Dkt. Nos. 76 & 86.

The Court held an emergency telephone conference on this Oral Motion for

Clarification of the Court's Previous Order [Dkt. No. 85] and provided the requested clarification. *See* Dkt. No. 87.

Keplar has now filed a Motion for Sanctions. *See* Dkt. Nos. 88 & 89 & 92. Google filed a response, *see* Dkt. No. 101, and Keplar filed a reply, *see* Dkt. No. 103.

Google also filed a Cross-Motion for Sanctions, *see* Dkt. No. 101, to which Keplar responded, *see* Dkt. No. 104, and in support of which Google filed a reply, *see* Dkt. No. 117.

For the reasons and to the extent explained below, the Court grants in part and denies in part Keplar's Emergency Motion to Enforce Order on Motion to Compel and Extend Discovery Period as Necessary, and to Compel Responses to Interrogatories, Requests for Admission and Document Requests [Dkt. No. 79], Keplar's Motion for Sanctions [Dkt. No. 88], and Google's Cross-Motion for Sanctions [Dkt. No. 101].

## Background

In the January 9, 2024 Electronic Order granting in part and denying in part Keplar's Motion to Compel [Dkt. No. 66], the Court explained and ordered that,

> [a]fter narrowing the relief that he seeks in his reply, Keplar asks the Court (1) to order the deposition of Phil Moyer, the VP of Global AI Business and Solutions of Defendant Google, LLC's Google Cloud organization, and (2) to order the deposition of one or more of Google's corporate representatives under Federal Rule of Civil Procedure 30(b)(6) to address (a), as relevant to Plaintiff's age discrimination claim, the ages, qualifications, and circumstances of separation, reduction in scope of duties, demotion, or replacement of employees of Google employed concurrently with Keplar in the Google Cloud sales organization of which Keplar was a part and (b), as relevant to Plaintiff's ERISA claim, the identity and circumstances of separation,

if any, of so-called Level 8 employees of Google employed concurrently with Keplar in the Google Cloud sales organization along with Keplar.

Federal Rule of Civil Procedure 37(a) generally governs motions to compel discovery but does not, by its terms, address a motion to compel a party to appear for a deposition. See Fed. R. Civ. P. 37(a). The only recourse expressly provided under the Federal Rules for a party seeking another party's deposition is to properly notice the deposition and file a motion under Rule 37(d)(1)(A) if and when the deponent fails to appear. *See generally Robinson v. Dallas Cty. Cmty. Coll. Dist.*, No. 3:14-cv-4187-D, 2016 WL 1273900, at *2 (N.D. Tex. Feb. 18, 2016).

But, "[u]nlike Rule 37, which allows a court to grant a motion to compel only after a party has failed to appear for a properly noticed deposition, [Federal Rule of Civil Procedure] 26(c)(1) allows a party or nonparty from whom discovery is sought to move for a protective order so long as that person has 'in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.'" *Dang ex rel. Dang v. Eslinger*, No. 6:14-cv-37-Orl-21TBS, 2014 WL 3611324, at *2 (M.D. Fla. July 22, 2014). Under Federal Rule of Civil Procedure 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). "[T]he burden is upon [the party seeking the protective order] to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l*, 134 F.3d 302, 306 (5th Cir. 1998) (citation omitted). A protective order is warranted in those instances in which the party seeking it demonstrates good cause and a specific need for protection. *See Landry v. Air Line Pilots Ass'n*, 901 F.2d 404, 435 (5th Cir. 1990). The Court has broad discretion in determining whether to grant a motion for a protective order. *See Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985).

"Under somewhat similar circumstances, even where the movant has not served a notice of deposition or subpoena, other courts have treated a response to a motion to compel a deposition as a motion for a Rule 26(c)(1) protective order or have otherwise decided the fully-briefed issues so long as they were sufficiently defined and concrete." *Robinson*, 2016 WL 1273900, at *4. And, here, where Google is effectively asking for a protective order from taking these depositions and the issues have been fully argued to the Court, and in light of the impending "expiration of the discovery period," the Court declines Google's invitation to deny the motion because Keplar has not served deposition notices and instead "elects to follow these courts' lead, treat [Google's] response as a request for a Rule 26(c)(1)

protective order, and address the merits of the dispute as to whether [Google] should be ordered to" produce these witnesses for deposition. *Id.* at *5.

As to the deposition of Phil Moyer, assuming that he qualifies as a high-level executive subject to the federal counterpart of Texas's "Apex doctrine," the Court finds that his testimony regarding his alleged or acknowledged involvement in the review and rating of Keplar and the decisions to discipline and then terminate Keplar are relevant to Keplar's claims. In short, Keplar seeks to question Mr. Moyer about relevant facts of which he has unique personal knowledge and that cannot be discovered through "less intrusive means," including the depositions that have already been taken of Yolanda Piazza and Elizabeth Elkins and, if such a finding is called for, the Court therefore finds, under the circumstances, "exceptional" or "extraordinary" circumstances to permit this deposition. *See Gaedeke Holdings VII, Ltd. v. Mills*, No. 3:15-mc-36-D-BN, 2015 WL 3539658, at *3-*4 (N.D. Tex. June 5, 2015).

As to the 30(b)(6) topics, courts do limit discovery in this context to information on current or former employees who could be a plaintiff's comparators -- that is, who are sufficiently similar to Keplar for these purposes. And the Court is persuaded that, as Google argues, Keplar's supervisor and subordinates (that is, here, individual contributors who were supervised by directors such as Keplar) are not sufficiently similarly situated to warrant discovery under Federal Rule of Civil Procedure 26(b)(1). *See generally Grimes v. Wal-Mart Stores Texas, L.L.C.*, 505 F. App'x 376, 379 (5th Cir. 2013); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260-61 (5th Cir. 2009); *Amezquita v. Beneficial Texas, Inc.*, 264 F. App'x 379, 386 (5th Cir. 2008). But, as Google acknowledges, Ivan Fernandez, the employee who replaced Keplar after his termination, might be considered a comparator. The Court finds, under Rules 26(b)(1) and 30(b)(6), that Google must present a corporate representative to testify regarding the ages, qualifications, and circumstances of separation, reduction in scope of duties, demotion, or replacement of any employees of Google, including Mr. Fernandez, who were employed as directors (the same level as Keplar) concurrently with Keplar in the Financial Services Industry vertical of the Google Cloud sales organization of which Keplar was a part and regarding the identity and circumstances of separation, if any, of so-called Level 8 employees who were employed as directors (the same level as Keplar) concurrently with Keplar in the Google Cloud sales organization of which Keplar was a part.

Without opposition, the Court will also grant Googles requested protective order to require that, in any deposition taken going forward

in this case, (1) all counsel of record must be visible on camera; visibility requires that the counsel's face must not be obscured from the witness or other participants; (2) all participants to a deposition proceeding must announce their presence in the deposition if participating by remote means; (3) all Orders of the Court (including the [54] Stipulated Protective Order) must be observed, and any person prohibited from reviewing a document marked "Attorneys Eyes Only" must leave the deposition before the document is revealed, before questions about the document are asked, and before the document is introduced as an exhibit; (4) counsel for the parties must allow both witnesses and opposing counsel requested breaks when no question is pending; and (5) counsel examining any witness must allow the witness to fully complete his or her answer to any question asked without interruption or other misconduct to impede the answer. *See generally* FED. R. CIV. P. 30(b)(5)(B), 30(c)(2).

Finally, after considering all the circumstances here, the Court determines that, under Federal Rule of Civil Procedure 37(a)(5)(C), the parties will bear their own expenses, including attorneys' fees, in connection with this motion.

Dkt. No. 76.

Keplar reports in his Motion for Sanctions that, "[o]n February 14, 2024, at approximately 11 a.m. Central Time, Magistrate Judge David Horan held an emergency telephone conference during the deposition of Philip Moyer required by his February 9, 2024 order on the emergency motion, and ruled, among other things, that Mr. Moyer was required by such order to complete his deposition of up to seven hours on February 14," 2024. Dkt. No. 88 at 1.

To clarify, during that emergency telephone conference, the Court, in response to Google's counsel's protests that Mr. Moyer should not be deposed for more than a few hours, clarified that the deposition of Mr. Moyer as ordered by the Court would proceed based on Federal Rule of Civil Procedure 30, which provides that, "[u]nless otherwise stipulated or ordered by the court, a deposition is limited

to 1 day of 7 hours." FED. R. CIV. P. 30(d)(1).

In connection with his Motion for Sanctions, Keplar explains that, "[b]ased on the fact that summary judgment proceedings in this action are to begin on February 21, 2024, Plaintiff asks for expedited consideration of this motion for sanctions and this supplement so that all discovery products to which Plaintiff is entitled can be available to Plaintiff prior to the time at which he is required to respond to a summary judgment motion." Dkt. No. 89 at 4. The Court did order expedited briefing on both motions for sanctions. *See* Dkt. Nos. 91 & 94 & 100 & 111. And Google has moved for summary judgment. *See* Dkt. No. 95. Goodman's deadline to respond is March 13, 2024, and United States District Judge Jane J. Boyle has denied Keplar's motion to extend his time to respond. *See* Dkt. No. 114. But Keplar has moved to reconsider. *See* Dkt. Nos. 115 & 116.

Through his Motion for Sanctions, Keplar seeks sanctions against Google under Federal Rules of Civil Procedure 37(a)(3)(C), 37(a)(5), 37(b)(1), 37(b)(2)(A), and 37(b)(2)(C) and the Court's inherent powers. *See* Dkt. No. 88 at 4-5.

Google, through its Cross-Motion for Sanctions, seeks sanctions against Keplar under Federal Rule of Civil Procedure 37(b)(2). *See* Dkt. No. 101 at 12.

## Legal Standards

I.   Federal Rules of Civil Procedure 37(a) and 37(b)(1)

Federal Rule of Civil Procedure 37(b)(1) provides: "If the court where the discovery is taken orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of court. If a

deposition-related motion is transferred to the court where the action is pending, and that court orders a deponent to be sworn or to answer a question and the deponent fails to obey, the failure may be treated as contempt of either the court where the discovery is taken or the court where the action is pending." FED. R. CIV. P. 37(b)(1).

But Rule 37(b)(1) applies only when a deponent fails to appear and be sworn or when a court has already ordered the deponent to answer a question. *See CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 323 n.11 (5th Cir. 2023) (noting that "Rule 37(b)(1) [] govern[s] a deponent's failure to be sworn or to answer a question after being directed to do so by the court" (cleaned up)).

"'Once a deponent has appeared for a deposition, Federal Rule of Civil Procedure 37(a)(3)(B)(i) governs a motion to compel a deponent – whether a party or a non-party – to answer a question.' *MetroPCS v. Thomas*, 327 F.R.D. 600, 612 (N.D. Tex. 2018) (citing FED. R. CIV. P. 37(a)(2)(B)(i) ('A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: (i) a deponent fails to answer a question asked under Rule 30 or 31....')). Under Rule 37(a)(3)(B)(i), the Court may compel answers to depositions questions where a deponent fails to answer a question asked under Rule 30. FED. R. CIV. P. 37(a)(3)(B)(i). And 'an evasive or incomplete ... answer ... must be treated as a failure to ... answer.' FED. R. CIV. P. 37(a)(4)." *VeroBlue Farms USA Inc. v. Wulf*, ___ F.R.D. ____, No. 3:19-cv-764-X, 2021 WL 5176839, at *11 (N.D. Tex. Nov. 8, 2021) (cleaned up).

Under Federal Rule of Civil Procedure 37(a)(2), such "[a] motion for an order to a party must be made in the court where the action is pending," while "[a] motion for an order to a nonparty must be made in the court where the discovery is or will be taken." FED. R. CIV. P. 37(a)(2). And Federal Rule of Civil Procedure 37(a)(3)(C) provides that, "[w]hen taking an oral deposition, the party asking a question may complete or adjourn the examination before moving for an order" to compel an answer under Rule 37(a)(3)(B)(i) to a question asked during a Rule 30 oral deposition. FED. R. CIV. P. 37(a)(3)(C); *see Jackson v. Wexford Health Sources, Inc.*, No. 3:20-CV-00900-DWD, 2023 WL 8020725, at *6 (S.D. Ill. Nov. 20, 2023), *reconsideration denied*, No. 3:20-CV-900-DWD, 2024 WL 278362 (S.D. Ill. Jan. 25, 2024).

Also, in connection with a Rule 37(a)(3)(B)(i) motion to compel,

Rule 37(a)(5) provides, in pertinent part, that, on a Rule 37(a)(3)(B)(i) motion to compel an answer from a deponent, including a non-party:
- "If the motion is granted ... the court must, after giving an opportunity to be heard, require the ... deponent whose conduct necessitated the motion, the ... attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust."
- "If the motion is denied, the court may issue any protective order authorized under Rule 26(c) and must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. But the court must not order this

payment if the motion was substantially justified or other circumstances make an award of expenses unjust."

- "If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26© and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion."

FED. R. CIV. P. 37(a)(5)(A)-(C).

*VeroBlue*, 2021 WL 5176839, at *12 (cleaned up).

## II.   Federal Rule of Civil Procedure 30

Depositions in this case were taken under Federal Rule of Civil Procedure 30, which

governs the conduct or counsel, parties, and deponents in connection with a party's deposition as an initial matter, and Rule 30(c)(2) governs objections to deposition questions and when a party must answer. *See* FED. R. CIV. P. 30(c)(2). "An objection at the time of the examination – whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition – must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection." *Id.* "An objection must be stated concisely in a nonargumentative and nonsuggestive manner." *Id.* "An objection to a deponent's competence – or to the competence, relevance, or materiality of testimony – is not waived by a failure to make the objection before or during the deposition, unless the ground for it might have been corrected at that time." FED. R. CIV. P. 32(d)(3)(A). "An objection to an error or irregularity at an oral examination is waived if: (i) it relates to the manner of taking the deposition, the form of a question or answer, the oath or affirmation, a party's conduct, or other matters that might have been corrected at that time; and (ii) it is not timely made during the deposition." FED. R. CIV. P. 32(d)(3)(B).

And Rule 30(c)(2) provides only three situations in which a deponent may properly be instructed not to answer a question – "only when necessary" (1) to preserve a privilege, (2) to enforce a limitation previously ordered by a court, or (3) to present a motion under Federal Rule of Civil Procedure 30(d)(3) to terminate or limit the deposition on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party. *Id.* ("A person may instruct a deponent not to answer only when

-10-

necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).”). “‘Directions to a deponent not to answer a question can be even more disruptive than objections.’” *Rangel v. Gonzalez Mascorro*, 274 F.R.D. 585, 591 n.7 (S.D. Tex. 2011) (quoting FED. R. CIV. P. 30(d) 1993 Advisory Committee's Note).

“Because the plain language of Rule 30 is rather clear on what types of objections counsel may make and when counsel may instruct a deponent not to answer a question, courts have generally concluded that it is improper to instruct a witness not to answer a question based on a relevancy objection. However, if counsel's questions go so far beyond the realm of possible relevance where the deposition is being conducted in an abusive manner (i.e., in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party), then it would be permissive to instruct a deponent not to answer and move for a protective order under Rule 30(d)(3).” *Id.* at 591 (footnote and citations omitted).

“The only ground for [a Rule 30(d)(3)] motion to limit or terminate the deposition is that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.” *Mayberry v. Wal-Mart La., LLC*, Civ. A. No. 14-cv-478, 2015 WL 420284, at *3 (W.D. La. Jan. 29, 2015).

And Rule 30(d)(3)(A) expressly limits the timing for a Rule 30(d)(3) motion: “At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party.” FED. R. CIV. P. 30(d)(3)(A); *see Mashiri v. Ocwen Loan Servicing, LLC*, No. 12cv2838-L (MDD), 2014 WL 4608718, at *2 (S.D. Cal. Sept. 15, 2014) (“If counsel for Plaintiff believed that counsel for Defendant was asking the same question repeatedly in bad faith or to unreasonably annoy, embarrass or oppress Plaintiff, counsel's option was to move to terminate or limit the deposition under Rule 30(d)(3). Plaintiff's current motion to terminate the deposition is untimely for that purpose as Rule 30(d)(3) requires the motion be made during the deposition.”); *see also Redwood v. Dobson*, 476 F.3d 462, 467-68 (7th Cir. 2007) (“Webber gave no reason beyond his declaration that the questions were designed to harass rather than obtain information – which may well have been their point, but Fed. R. Civ. P. 30(d) specifies how harassment is to be handled. Counsel for the witness may halt the deposition and apply for a protective order, *see* Rule 30(d)(4), but must not instruct the witness to remain silent. ‘Any objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A

person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4).' Fed. R. Civ. P. 30(d)(1). Webber violated this rule repeatedly by telling Gerstein not to answer yet never presenting a motion for a protective order. The provocation was clear, but so was Webber's violation.").

Rule 30(d)(3) further provides that "[t]he motion may be filed in the court where the action is pending or the deposition is being taken"; that, "[i]f the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order"; that "[t]he court may order that the deposition be terminated or may limit its scope and manner as provided in [Federal Rule of Civil Procedure] 26(c)"; that, "[i]f terminated, the deposition may be resumed only by order of the court where the action is pending"; and that Federal Rule of Civil Procedure "37(a)(5) applies to the award of expenses" in connection with a Rule 30(d)(3) motion. FED. R. CIV. P. 30(d)(3)(A)-(C).

*VeroBlue*, 2021 WL 5176839, at *10-*11 (cleaned up).

Federal Rule of Civil Procedure 30(d)(1) provides that "[u]nless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours." FED. R. CIV. P. 30(d)(1); citations omitted).

"Before extending the duration of depositions, a court must be satisfied that the moving party has shown 'good cause.' Similar to [Federal Rule of Civil Procedure] 30(a)(2), Rule 30(d)(1) states that a court 'must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent....' Courts have allowed parties to reopen depositions when new information comes to light that creates the need for further questioning. 'New information' can include the addition of new parties to the case, the addition of new allegations to the pleadings, and the production of new documents. If a deposition is reopened because of newly discovered information, the court should limit the deposition to questions related to

this information." *VeroBlue*, 2021 WL 5176839, at *10 (cleaned up and quoting Fed. R. Civ. P. 30(d)(1) and *O'Connor v. Cory*, No. 3:16-cv-1731-B, 2018 WL 5016291, at *2 (N.D. Tex. Oct. 16, 2018)).

> And, in addition to Rule 30(d)(3),
>
> Federal Rule of Civil Procedure 30(d)(2) provides that "[t]he court may impose an appropriate sanction – including the reasonable expenses and attorney's fees incurred by any party – on a person who impedes, delays, or frustrates the fair examination of the deponent." Fed. R. Civ. P. 30(d)(2). "The meaning of 'appropriate sanction' in Rule 30(d)(2) has been broadly interpreted as [t]he full scope of sanctions available under Rule 30(d)(2) is not expressly described in the text of the rule. Many courts have construed Rule 30(d)(2) to apply to circumstances where a party's conduct at a deposition warranted remedial action." *Murillo Modular Group, Ltd. v. Sullivan*, No. 3:13-cv-3020-M, 2016 WL 6139096, at *7 (N.D. Tex. Oct. 20, 2016) (internal quotation marks omitted)
>
> "The broad scope of appropriate sanctions under Rule 30(d)(2) includes, where appropriate, an award of expenses associated with a deposition's continuation that is necessitated by a [person's] conduct that impedes, delays, or frustrates the fair examination of the deponent." *Nieman v. Hale*, No. 3:12-cv-2433-L-BN, 2014 WL 4375669, at *5 (N.D. Tex. Sept. 4, 2014). The movant bears the burden on any Rule 30(d)(2) motion that it makes. *See Kleppinger v. Tex. Dep't of Transp.*, 283 F.R.D. 330, 333 (S.D. Tex. 2012).

*VeroBlue*, 2021 WL 5176839, at *12 (cleaned up).

III.   <u>Federal Rule of Civil Procedure 37(b)(2)</u>

Federal Rule of Civil Procedure 37(b)(2)(A) provides that, "[i]f a party ... fails to obey an order to provide or permit discovery, ... the court where the action is pending may issue further just orders. They may include the following:

> (i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii)   prohibiting the disobedient party from supporting or opposing

-13-

> designated claims or defenses, or from introducing designated
> matters in evidence;
>
> (iii)    striking pleadings in whole or in part;
> (iv)    staying further proceedings until the order is obeyed;
> (v)    dismissing the action or proceeding in whole or in part;
> (vi)    rendering a default judgment against the disobedient party; or
> (vii)    treating as contempt of court the failure to obey any order except
> an order to submit to a physical or mental examination.

FED. R. CIV. P. 37(b)(2)(A)(i)-(vii).

Rule 37(b)(2)(C) further requires that, "[i]nstead of or in addition to the orders [described under Rule 37(b)(2)(A)], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(b)(2)(C).

"A party's discovery conduct is found to be 'substantially justified' under Rule 37 if it is a response to a 'genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *S.E.C. v. Kiselak Capital Grp., LLC*, No. 4:09-cv-256-A, 2012 WL 369450, at *5 (N.D. Tex. Feb. 3, 2012) (quoting *Devaney v. Continental Am. Ins. Co.*, 989 F.2d 1154, 1163 (11th Cir. 1993) (in turn quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988))). "The burden rests on the party who failed to comply with the order to show that an award of attorney's fees would be unjust or that the opposing party's position was substantially justified." *Id.* at *3 (footnote omitted).

The undersigned has authority to enter a nondispositive order granting attorneys' fees or other nondispositive sanctions under Federal Rule of Civil

-14-

Procedure 37(b) or denying a request for what might be considered a dispositive sanction. *See* 28 U.S.C. § 636(b); *Merritt v. Int'l Bhd. of Boilermakers*, 649 F.2d 1013, 1016-17 (5th Cir. Unit A 1981) (per curiam) (a magistrate judge has authority to enter a nondispositive order granting attorneys' fees as a sanction under Federal Rule of Civil Procedure 37); *Siegel v. Compass Bank*, No. 3:18-cv-1023-X, 2021 WL 4498914, at *1 (N.D. Tex. Jan. 11, 2021) ("To determine whether a referred motion for sanctions is dispositive or non-dispositive, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether Rule 72(a) or 72(b) applies. To allow otherwise would permit the party seeking sanctions to engage in a game of labels that would improperly dictate the standard of review." (cleaned up)); *Brown v. Bridges*, No. 3:12-cv-4947-P, 2015 WL 410062, at *1-*4 (N.D. Tex. Jan. 30, 2015) (explaining that, when a district judge refers a motion for sanctions to a magistrate judge, the sanction chosen by the magistrate judge, rather than the sanction sought by the party, governs the determination of whether Federal Rule of Civil Procedure 72(a) or 72(b) applies and that, when the magistrate judge finds that dismissal or another sanction disposing of a claim or defense is unwarranted, the motions should be characterized as non-dispositive and may be ruled on by the magistrate judge) (followed in *Green Hills Dev. Co., LLC v. Credit Union Liquidity Servs., LLC*, No. 3:11-cv-1885-L-BN, Dkt. No. 373 at 2 (N.D. Tex. Dec. 1, 2016)).

Rule 37(b)(2) "empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, Fed.

R. Civ. P. 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (internal quotation marks omitted); *see also Chilcutt v. United States*, 4 F.3d 1313, 1322 n.23 (5th Cir. 1993) ("Rule 37(b) clearly indicates that district courts have authority to grant a broad spectrum of sanctions.").

"The district court has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Smith*, 685 F.3d at 488 (internal quotation marks omitted). "This discretion, however, is limited" based on the type of sanctions imposed. *Id.*

The United States Court of Appeals for the Fifth Circuit has explained that its "caselaw imposes a heighted standard for litigation-ending sanctions (sometimes called 'death penalty' sanctions). For a lesser sanction, we broadly require the district court to determine the sanctions are 'just' and 'related to the particular 'claim' which was at issue in the order to provide discovery.'" *Law Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019) (cleaned up).

The sanction imposed should be the least severe sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances. *See Smith*, 685 F.3d at 488-90.

And the Fifth Circuit recently repeated its guidance that, "to levy a litigation-ending sanction for a discovery violation, the court must make four findings. *First*, the violation reflects bad faith or willfulness. *Second*, the client, not

counsel, is responsible for the violation. *Third*, the violation substantially prejudiced the opposing party. *Fourth*, a lesser sanction would not substantially achieve the desired deterrent effect." *Vikas WSP, Ltd. v. Econ. Mud Prod. Co.*, 23 F.4th 442, 454 (5th Cir. 2022) (cleaned up); *accord Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1304 (5th Cir. 1988) ("We have repeatedly emphasized that a dismissal with prejudice is a 'draconian' remedy, or a 'remedy of the last resort,' to be employed only when the failure to comply with the court's order results from wilfullness or bad faith rather than from an inability to comply. Nevertheless, deliberate, repeated refusals to obey discovery orders have been held to warrant the use of this ultimate sanction." (footnote omitted)); *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 514 (5th Cir. 1985) ("[D]ismissal is authorized only when the failure to comply with the court's order results from willfulness or bad faith, and not from the inability to comply.").

But "[l]esser sanctions do not require a finding of willfulness." *Smith*, 685 F.3d at 488. "Of course, the flagrancy of a party's behavior must be directly proportionate to the severity of the sanction imposed," but "the lack of willful, contumacious, or prolonged misconduct [does not] prohibit[] all sanctions." *Chilcutt*, 4 F.3d at 1322 n.23. Even where a party was "unable to comply with the discovery requests, the district court still ha[s] broad discretion to mete out a lesser sanction than dismissal." *Id.* (emphasis omitted).

That is because "the type of conduct displayed by a party had no bearing on whether sanctions should be imposed, but only on the type of sanctions imposed,"

and "[t]he willfulness or good faith of [a party], can hardly affect the fact of noncompliance and [is] relevant only to the path which the District Court might follow in dealing with [the party's] failure to comply." *Id.* (internal quotation marks and emphasis omitted).

Rule 37(b) "is designed to empower the court to compel production of evidence by the imposition of reasonable sanctions." *Dorsey v. Acad. Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970). "Sanctions under Rule 37 serve the dual function of reimbursing the moving party and deterring the violator of the discovery orders (as well as other potential violators)." *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986).

And "[a]n order is not always a prerequisite to the imposition of Rule 37(b)(2) sanctions, which can be imposed even without an existing motion to compel. *See McLeod, Alexander, Powel & Apfel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). The United States Court of Appeals for the Fifth Circuit has approvingly cited another court's explanation that, '[i]n general, where a party has received adequate notice that certain discovery proceedings are to occur by a specific date, and that party fails to comply, a court may impose sanctions without a formal motion to compel the discovery from the opposing party.' *Id.* (internal quotation marks omitted)." *Fu v. Chin*, No. 3:18-cv-2066-N-BN, 2020 WL 7049161, at *4 (N.D. Tex. Oct. 23, 2020), *rep. & rec. adopted*, 2020 WL 7047053 (N.D. Tex. Dec. 1, 2020).

IV.   The Court's inherent powers

"A district court has the inherent authority to impose sanctions in order to

-18-

control the litigation before it." *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 619 F.3d 458, 460 (5th Cir. 2010) (cleaned up). This includes "the power to levy sanctions in response to abusive litigation practices." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993). Accordingly, "[a] district court has inherent power to sanction attorneys for bad faith conduct in litigation." *Crowe v. Smith*, 261 F.3d 558, 563 (5th Cir. 2001).

But these inherent powers "ought to be exercised with great caution" and are reserved for "conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 44-45 (1991) (cleaned up). "The threshold for the use of the inherent power sanction is high." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467 (5th Cir. 1996).

Although "the inherent power extends to a full range of litigation abuses," the United States Supreme Court has cautioned that, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. at 44, 46. "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44-45.

And courts may generally turn to their inherent powers only if "there is no statute or rule that adequately addresses the conduct." *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 573 (5th Cir. 2020); *see Chambers*, 501 U.S. at 50 ("Furthermore, when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the Rules, the court ordinarily should rely on the Rules rather than the inherent power."); *Carroll v. Jaques Admiralty L. Firm, P.C.*,

110 F.3d 290, 292 (5th Cir. 1997) ("When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions.").

But "a federal court [is not] forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules," and, "if in the informed discretion of the court, neither the statute nor the Rules are up to the task, the court may safely rely on its inherent power." *Chambers*, 501 U.S. at 50.

The Fifth Circuit has generally (outside the spoliation context) required a finding of clear and convincing proof of bad faith to impose sanctions under a district court's inherent powers. *See, e.g.*, *Vikas WSP, Ltd. v. Econ. Mud Prod. Co.*, 23 F.4th 442, 455 (5th Cir. 2022). And "[a] court may assess attorney's fees under its inherent powers when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" but "must make a specific finding that the sanctioned party acted in bad faith in order to impose such sanctions." *Matta v. May*, 118 F.3d 410, 416 (5th Cir. 1997).

And any sanctions ordered should be "the least severe sanctions adequate to accomplish the purpose for which the sanction was imposed." *Topalian v. Ehrman*, 3 F.3d 931, 938 (5th Cir. 1993); *accord Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952–53 (5th Cir. 2001).

## Analysis

I.    <u>This is not how litigation is meant to go.</u>

Counsel in this case lately "have had a hard time getting along." *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476, 511 (N.D. Tex. 2016) (cleaned up), *objections overruled sub nom.*, No. 3:13-cv-2110-KS-BH, 2016 WL 5942223 (N.D. Tex. Oct. 13, 2016).

At the oral argument on Keplar's Motion to Compel, the Court said something to the same effect as this apt passage that another judge in this district once wrote: "[T]he Court's role is to determine whether the movants are entitled to the discovery they seek under the relevant Federal Rules of Civil Procedure and precedent. Although Plaintiff and Defendants spent the better part of their briefs and their time at the hearing arguing over their respective difficulties in getting opposing counsel to cooperate, the Court would prefer to focus on the merits of the discovery dispute rather than the difficulties counsel have in dealing with one another." *M3Girl Designs, LLC v. Blue Brownies, LLC*, No. 3:09-cv-2390-F, 2011 WL 13128965, at *2 (N.D. Tex. Aug. 31, 2011). And that is what the Court did in resolving Keplar's Motion to Compel. *See* Dkt. No. 76.

Now, having resolved Keplar's discovery motion and a follow-on dispute, the Court is presented with cross-motions for sanctions.

Neither party suggests that the other counsel's "conduct in the case so far is so egregious that the case should be resolved by sanctions disposing of the case." *Brown v. Bridges*, No. 12-cv-4947-P, 2015 WL 410062, at *8 (N.D. Tex. Jan. 30, 2015). And,

yet, the rhetoric throughout the briefing on these motions brings "'much heat but little light to the court's task of deciding discovery disputes.'" *Id.* (quoting *Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 289 (N.D. Tex. 1988)).

As the Court has noted before, "[a]d hominem attacks and efforts to press collateral proceedings on sanctions ... – except in the most exceptional instances in which no other approach is appropriate or up to the task – only serve to multiply and delay proceedings and fly in the face of the court's and the Federal Rules' preference for deciding disputes on the merits." *Areizaga v. ADW Corp.*, No. 3:14-cv-2899-B, 2016 WL 3511788, at *9 (N.D. Tex. June 7, 2016), *rep & rec. adopted*, 2016 WL 3419097 (N.D. Tex. June 22, 2016).

But the parties insist that the Court is facing one of those exceptional instances. Counsel does so while accusing opposing counsel of

- filing a "motion for sanctions [that] is nothing other than another blatant attempt to harass and bully opposing counsel and witnesses because he is unhappy with the testimony and evidence gathered to date in this case";
- engaging "in a deliberate maneuver calculated to unnecessarily increase the costs of litigation in this matter" and "and require Google to waste resources responding positions for which he knows there is no factual basis";
- being "dishonest" in "suggest[ing] and demand[ing] that he is permitted to seek information about all Level 8s (of which there would be subordinates and supervisors) in all verticals throughout Google Cloud-including the retail, healthcare, telecommunications and gaming, etc.)";
- "seeking the depositions" at issue based on "his true motivation" to impose on Google "further and expansive litigation";
- being "absolutely hypocritical ... to suggest, in a lecturing manner [], that counsel need to trust each other";

- "not necessarily seeking [restroom breaks] in good faith";
- "simply lying when it claims attorney's eyes-only documents were discussed during Ms. Piazza's deposition with Plaintiff present in the room";
- "offer[ing] a false and puerile insinuation that Plaintiff's counsel, in referring to 'next steps' on a particular occasion, meant anything other than steps to be taken in this action assuming the lack of mutual acceptance of a mediator's proposal pending at the time";
- filing an "intellectually dishonest" response that "lacks maturity"; and
- "wrongfully and boldly accus[ing] Defendant's counsel of lying" in an "assertion [that] is both ludicrous and offensive, as in reality, it is Plaintiff's counsel who is making false statements and can be characterized as the one being untruthful."

*See* Dkt Nos. 101, 103, 104, & 117.

Some, but not all, of this is delivered in footnotes. Leaving aside citational footnotes (as opposed to substantive footnotes), the trouble with footnotes is that they facilitate, if not encourage, attorneys to drop in material that they did not – and, in some instances, would not ever – include in the body of a motion or brief.

This includes points that counsel may not feel comfortable making in the main text or, other times, asides and tangential observations.

And placing arguments in footnotes "may be considered a way to squeeze more text in" and "to avoid compliance with the page limitation." *Merrill Lynch, Pierce, Fenner & Smith, P.C. v. Greystone Servicing Corp.*, No. 3:06-cv-0575-P, 2007 WL 2729935, at *13 n.7 (N.D. Tex. Sept. 18, 2007); *India Brewing, Inc. v. Miller Brewing Co.*, 237 F.R.D. 190, 195 (E.D. Wis. 2006)

But, as counsel has done here, attorneys may also fill footnotes with substantive arguments, including points that the party may consider important or significant. Yet the Court is entitled to expect that, if that is so, the material will be

found in the brief's main text or body. And, so, some judges have "cautioned litigants against the practice of placing substantive arguments solely in footnotes" and warned that substantive arguments "placed in footnotes may be disregarded by the court." *India Brewing*, 237 F.R.D. at 195; *Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315, 1323 n.7 (S.D. Miss. 2003).

But the Court has reviewed everything that the parties have submitted with their competing motions for sanctions.

Under the circumstances, the Court will not dispose of either motion based on any counsel's failing to properly confer with opposing counsel before filing or failing to timely file an appendix that complies with the local rules. *See VeroBlue*, 2021 WL 5176839, at *25. And "[a]ll counsel are reminded of their obligation to remain civil and avoid ad hominem attacks against opposing counsel – no matter how frustrated they are by the situation." *Lewis v. La. State Univ.*, No. CV 21-198-SM-RLB, 2022 WL 5013085, at *5 (M.D. La. Oct. 4, 2022).

But it is time to resolve these matters and get this case past the discovery stage.

And, so, the Court now turns to what each party alleges.

II.    The conduct that the parties allege the other engaged in do not warrant all the <u>sanctions they seek.</u>

Keplar asserts that Google's sanctionable conduct includes the following:

- Google delayed in complying with the Court's January 9, 2024 order on Keplar's Motion to Compel;
- Google's counsel unnecessarily precipitated the emergency telephone conference on February 14, 2024;

- On February 14, 2024 at approximately 3:45 p.m. Central Time, when approximately two-and-one-half hours of the maximum seven hours remained available to complete the deposition of Mr. Moyer, Google's counsel for the first time during the deposition, advised Keplar's counsel and the court reporter and videographer that Mr. Moyer could not complete his deposition on February 14, 2024 but would leave the deposition at 4:00 p.m. Central Time – which he did;
- Google's counsel knew of Mr. Moyer's unavailability for deposition after 4:00 p.m. Central time at the time of the emergency telephone conference on February 14, 2024 but did not advise the Court;
- Google's counsel made repeated objections during Mr. Moyer's deposition that did not comply Federal Rule of Civil Procedure 30(c)(2), including objecting to leading questions despite Mr. Moyer's being an adverse witness as to Keplar;
- Google's counsel, despite the lack of any claim of privilege, instructed Mr. Moyer not to answer questions calculated to determine whether he remains an employee of Google entitled to engaged in privileged communications as such with Google's counsel related to his deposition before or during it;
- Google failed to produce documents for all directors within Google within Defendant's Google Cloud financial services industry;
- Google's corporate representative witness, Yolande Piazza, refused in her February 15, 2024 deposition to offer testimony beyond the limited group of directors as to which documents were offered; and
- Google failed to produce documents, and Ms. Piazza also refused to testify, about information separately required to be provided by the January 9, 2024 order about Level 8 directors within Defendant's Google Cloud organization not limited to the FSI vertical.

Dkt. No. 88 at 1-3; Dkt. No. 89 at 1-4; Dkt. No. 92 at 1-2; Dkt. No. 103 at 1-9.

Keplar asserts that Google's conduct had the following adverse effects on

Keplar and his counsel:

- The need to file Keplar's Emergency Motion to Enforce Order on Motion to Compel and Extend Discovery Period as Necessary, and to Compel Responses to Interrogatories, Requests for Admission and Document Requests [Dkt. No. 79] and for the Court to enter a February 8, 2024 order [Dkt. No. 81] and for the parties to file the February 8, 2024 Joint Notice of agreement [Dkt. No. 83];
- A need to obtain a new court reporter and videographer for the continued deposition of Mr. Moyer and consequent potential additional

cost beyond that which would have been incurred to complete the
deposition on February 14, 2024;

- Loss of final preparation time for the corporate representative
deposition otherwise built into the schedule of depositions referred to in
the parties' February 8, 2024 Joint Notice of agreement [Dkt. No. 83];

- A loss of time to review written discovery responses made and
documents produced in advance of the corporate representative
deposition as sought in Keplar's emergency motion [Dkt. No. 79] and
agreed by Google in the parties' February 8, 2024 Joint Notice of
agreement [Dkt. No. 83]; and

- A risk of improperly coached or altered testimony of Mr. Moyer in his
continued deposition by the provision an opportunity by Google's
counsel to advise him at length concerning his deposition in the middle
of it, an opportunity which would not have existed absent the deposition
continuing beyond February 14, 2024.

Dkt. No. 88 at 2-4; Dkt. No. 89 at 4.

In his opening Motion for Sanctions, Keplar asks the Court to, as sanctions

against Google,

(a)   "preclude Mr. Moyer from modifying his deposition testimony given on
February 14, 2024 by errata sheet or otherwise";

(b)   "require payment by Defendant of the cost of a second day of his
deposition";

(c)   "preclude use of deposition testimony of Mr. Moyer by Defendant for
any purpose";

(d)   "award Plaintiff's attorney's fees against Defendant, its counsel or both,
for preparing, filing and prosecuting this motion for sanctions";

(e)   "award monetary sanctions against Defendant, its counsel or both, as
appropriate to deter such conduct of Defendant and its counsel";

(f)   "compel[] Mr. Moyer to finally answer questions about his employment
status with Defendant"; and

(g)   "enforce the January 9, 2024 order, the parties' agreement reflected in
their February 8, 2024 notice of agreement, and Plaintiff's notice of
corporate deposition, by requiring production of documents and
testimony by Ms. Piazza on all directors as to whom documents and
information were required by one or more of the January 9, 2024 order,
February 8, 2024 notice of agreement and Plaintiff's notice of corporate
representation deposition, i.e., all directors within the FSI vertical and
all Level 8 directors in Defendant's Google Cloud organization whether
in FSI vertical or otherwise."

-26-

Dkt. No. 88 at 4; Dkt. No. 89 at 2, 3-4.

And, in his reply, Keplar explains that he is asking the Court to, as sanctions

against Google, enter

> (a) "an order precluding reliance on the deposition of Mr. Moyer at trial or testimony by him";
>
> (b) "an order requiring Mr. Moyer to submit to a brief continued deposition to answer questions regarding his employment status, and questions about his communication with counsel to Defendant if the truthful answer to the first question is that an agreement as to his separation from Defendant had been reached prior to his deposition such that Mr. Moyer could not be regarded as a continuing employee of Defendant at the time of his deposition";
>
> (c) "an order permitting Plaintiff to further question Mr. Moyer for a period of time consistent with the number and impropriety of many of Defendant's objections to Plaintiff's questions to him";
>
> (d) "an order requiring Ms. Piazza to submit to further questioning concerning directors in Defendant's FSI vertical identified by Mr. Moyer";
>
> (e) "an order requiring Ms. Piazza to answer questions about Level 8 directors in Defendant's Google Cloud organization not limited to FSI directors";
>
> (f) "an order requiring Defendant to produce requested documents as to all directors in Defendant's FSI vertical identified by Mr. Moyer"; and
>
> (g) "an order requiring Defendant to answer Plaintiff's interrogatories without limitation."

Dkt. No. 103 at 10.

Google, in turn, asserts that Keplar's counsel's sanctionable conduct during

the February 14 and 15, 2024 depositions includes the following:

> • Keplar's counsel interrupted witnesses and prohibit them from finishing answers, in violation of the protective order in the Court's January 9, 2024 Electronic Order [Dkt. No. 76];
>
> • Keplar's counsel refused reasonably-requested breaks during deposition, in violation of the protective order in the Court's January 9, 2024 Electronic Order [Dkt. No. 76];
>
> • Keplar's counsel violated the protective order by discussing "Attorneys

-27-

Eyes Only" (AEO)-designated documents in front of Keplar without first removing him from the room in which Keplar's counsel was examining the witness, in violation of the protective order in the Court's January 9, 2024 Electronic Order [Dkt. No. 76]; and

- Keplar's counsel attempted to engage in ex-parte communications with Mr. Moyer during his deposition by asking substantive questions of Mr. Moyer about the case during a restroom break and outside the presence of Google's attorneys on Zoom.

Dkt. No. 101 at 13-18; Dkt. No. 117 at 3-4.

As sanctions against Keplar and his counsel, Google asks the Court to "issue an order requiring the following:

(a) That Plaintiff and/or his counsel be required to pay of Google's attorneys' fees and costs incurred with responding to his Motion for Sanctions, with Brief, Supplement to Motion for Sanctions, With Request for Expedited Consideration, and Exhibits to Plaintiff's Motion for Sanctions and Supplement ("Motion") (DKT. 88, 89, 92);

(b) That Plaintiff and/or his counsel be required to pay of Google's attorneys' fees and costs incurred with filing its Cross Motion for Sanctions;

(c) That Plaintiff be prevented from taking any further depositions in this action as requested in his Motion for Sanctions;

(d) That if any further depositions in this action are ordered, that they be taken at the law offices of FordHarrison LLP, 1601 Elm Street, Suite 4450, Dallas, Texas 75201 and that Plaintiff be required to pay for an attorney-mediator (or other Court-designated intermediary) to attend such deposition to confirm his compliance with Magistrate Judge Horan's protective order; and

(e) The denial of all relief sought by Plaintiff in his Motion for Sanctions."

Dkt. No. 101 at 18.

The Court will address each alleged instance or category of sanctionable conduct in turn.

A. Google's delay in complying with the discovery order and unnecessarily precipitating the February 14, 2024 emergency telephone conference

Keplar offers Google's alleged delay in complying with the Court's January 9,

2024 Electronic Order and allegedly unnecessarily precipitating the February 14, 2024 emergency telephone conference as background, but he does not raise these matters as "instances of discovery misconduct by Defendant." Dkt. No. 103 at 1 & n.1. But the Court will further address below the extent to which Google has acted on what were mistaken interpretations of the Court's January 9, 2024 Electronic Order [Dkt. No. 76].

      B.    <u>Failing to complete Mr. Moyer's deposition on February 14, 2024</u>

During the February 14, 2024 emergency telephone conference, the Court did not specifically order that Mr. Moyer's deposition would happen only on February 14. Rather, the Court specified that the deposition would be for up to 7 hours, because its length was the matter of contention during the emergency telephone conference.

It appears from the record that Google's counsel should have let Keplar's counsel know sooner about Mr. Moyer's hard stop for the day that would fall less than 7 hours into his deposition. But the Court finds that this was not sanctionable conduct under Rule 37(b)(2) or the Court's inherent powers. And there is no basis to order Google to pay for the expenses incurred from the unexpected second day of Mr. Moyer's testimony because the parties had already scheduled Keplar's deposition of Google's Rule 30(b)(6) corporate representative to take place on February 15, 2024.

Neither is there any evidence on this record of any improper coaching or communications by Google's counsel with Mr. Moyer.

      C.    <u>Google's counsel's objections during Mr. Moyer's deposition</u>

Courts have observed that "constant interruptions and lengthy speaking

-29-

objections violate Rule 30(c)(2)'s requirement that objections be 'concise,' 'nonargumentative,' and 'nonsuggestive.'" *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, No. A-19-CV-696-RP, 2020 WL 710201, at *3 (W.D. Tex. Feb. 12, 2020) (quoting FED. R. CIV. P. 30(c)(2)); *see also Pinson v. N. Tool & Equip. Co.*, No. 3:10CV621-TSL-MTP, 2012 WL 5286933, at *1 (S.D. Miss. Oct. 24, 2012) ("Objections should generally be limited to the form of a question or the responsiveness of an answer." (citing FED. R. CIV. P. 30(d) Advisory Committee's Note, 1993 amendments and *In re Neurontin Antitrust Litig.*, MDL Docket No. 1479, Master Civil Action No. 02–1390(FSH), 2011 WL 253434, at *12 (D.N.J. Jan. 25, 2011) (observing that 'objections should be concise, non-argumentative, and non-suggestive, and hence ... counsel should not (1) make speaking, coaching or suggestive objections; (2) coach or change the witness's own words to form a legally convenient record; (3) frustrate or impede the fair examination of a deponent during the deposition by, for example, making constant objections and unnecessary remarks; (4) make speaking objections such as 'if you remember,' 'if you know,' 'don't guess,' 'you've answered the question,' and 'do you understand the question'; or (5) state that counsel does not understand the question')").

Some of Google's counsel's objections do not hold up well against this standard. *See* Dkt. No. 105-1. But Keplar's counsel did not timely move under Rule 30(d)(3).

And the Court finds that Google's counsel's objections did not reach the point, individually or cumulatively, of impeding delaying, or frustrating the fair

examination of Mr. Moyer and so are not sanctionable under Rule 30(d)(2).

And, in any event, the Court finds no basis on this record for, as Keplar requests, disallowing any use by Google of Mr. Moyer's deposition as a sanction for allegedly excessive speaking objections.

D.      Google's counsel's instructing Mr. Moyer not to answer

The deposition excerpt that Keplar provides does not reflect, as Keplar asserts, that Mr. Moyer "refused to answer questions about his employment status" but rather that, on February 15, 2024, Google's counsel instructed Mr. Moyer not to answer a question whether "Google [has] communicated to you that your employment is ending or has ended," while making clear that Google's counsel would not instruct Mr. Moyer not to answer a question as to whether he is currently employed at Google – just as Mr. Moyer had answered on February 14, 2024. *See* Dkt. No. 92 at 1; 92-1.

Keplar's counsel did not do so, and the Court finds no basis to order additional deposition questioning for Keplar's counsel to do so at this point.

And the only evidence on this record is that Mr. Moyer was an employee through February 14, 2024 (and apparently February 15, 2024 as well). And nothing suggests that Mr. Moyer's conversations with Google's counsel before and during his deposition were not subject to attorney-client privilege – regardless of whether or not Google maintained his employment relationship for the purpose of maintaining privilege.

The Court finds no grounds for any sanctions as to these allegations.

E.     Google's failing to produce documents for, and offer corporate representative testimony about, all directors within Google Cloud's <u>Financial Services Industry vertical</u>

The Court has carefully compared its January 9, 2024 Electronic Order [Dkt. No. 76] with the briefing and deposition excerpts relevant to these allegations. The bottom line is that the Court ordered "that Google must present a corporate representative to testify regarding the ages, qualifications, and circumstances of separation, reduction in scope of duties, demotion, or replacement of any employees of Google, including Mr. Fernandez, who were employed as directors (the same level as Keplar) concurrently with Keplar in the Financial Services Industry vertical of the Google Cloud sales organization of which Keplar was a part." Dkt. No. 76.

That is, the required testimony is limited to directors at the same level as Keplar. And Mr. Moyer's testimony makes clear that those are directors in an "M1" position. And, so, the Court finds no violation of its January 9, 2024 Electronic Order.

As for Keplar's document requests and interrogatories, Google did not, as Keplar observes, seek a protective order limiting the scope its responses and answers. And the Court's January 9, 2024 Electronic Order did not address these written discovery requests because they were not before the Court on the Motion to Compel.

But Keplar's emergency motion [Dkt. No. 79] did address them. And the parties then told the Court that there was no need for the Court to resolve that motion based on an agreement that "Google will supplement to the extent necessary

and consistent with Magistrate Judge Horan's January 9, 2024 Order [DKT. 76] its responses to Plaintiff's First Interrogatories, Requests for Admission and Document Requests and will provide responsive documents to the extent necessary and consistent with Magistrate Judge Horan's January 9, 2024 Order [DKT. 76]." Dkt. No. 83.

And, on the record before the Court, that appears to be what Google has done. And, so, the Court finds no basis to enter either a sanctions order or an order compelling further answers and production under Federal Rules of Civil Procedure 37(a)(3)(B)(iii)-(iv) based on these allegations.

> F.   Google's failing to produce documents for, and offer corporate representative testimony about, about Level 8 directors within the <u>Google Cloud organization not limited to the FSI vertical</u>

The same cannot be said as to the second Rule 30(b)(6) topic on which the Court ordered Google to present corporate representative testimony.

Google apparently read the Court's ordering "that Google must present a corporate representative to testify … regarding the identity and circumstances of separation, if any, of so-called Level 8 employees who were employed as directors (the same level as Keplar) concurrently with Keplar in the Google Cloud sales organization of which Keplar was a part" as ordering only "that Google must present a corporate representative to testify … regarding the identity and circumstances of separation, if any, of so-called Level 8 employees who were employed as directors (the same level as Keplar) concurrently with Keplar in <u>the Financial Services Industry vertical of</u> the Google Cloud sales organization of which Keplar was a part."

But the Court included the limitation "[in] the Financial Services Industry vertical" only in the first Rule 30(b)(6) topic that the Court ordered on Keplar's Motion to Compel: "regarding the ages, qualifications, and circumstances of separation, reduction in scope of duties, demotion, or replacement of any employees of Google, including Mr. Fernandez, who were employed as directors (the same level as Keplar) concurrently with Keplar in the Financial Services Industry vertical of the Google Cloud sales organization of which Keplar was a part."

The presence of that phrase in the first topic and not in the second reflects that the Court intended the limitation to apply to only the first topic. And that is what the Court ordered, notwithstanding Google's efforts now to narrow the Court's ordering language by pointing to the Court's more general statement regarding comparators and Google's resulting limitation of Ms. Piazza's corporate representative testimony. *See* Dkt. No. 92-2.

Google's counsel may have thought that the Court should have ruled more narrowly in deciding Keplar's Motion to Compel – but, if so, those thoughts did not lead Google to either timely file Federal Rule of Civil Procedure 72(a) objections with Judge Boyle or seek clarification from the Court in advance of preparing and presenting the required corporate representative for deposition.

And Google cannot, based on the agreement reflected in the parties' Joint Notice [Dkt. No. 83], correspondingly limit its interrogatory answers and document production when Google did not timely move for a protective order, Keplar moved to compel, and the parties agreed that "Google will supplement to the extent necessary

and consistent with Magistrate Judge Horan's January 9, 2024 Order [DKT. 76] its responses to Plaintiff's First Interrogatories, Requests for Admission and Document Requests and will provide responsive documents to the extent necessary and consistent with Magistrate Judge Horan's January 9, 2024 Order [DKT. 76]." Dkt. No. 83.

Google's violation of the Court's January 9, 2024 Electronic Order [Dkt. No. 76] in Ms. Piazza's corporate representative deposition testimony and its document production and interrogatory answers warrant a sanctions order under Rule 37(b)(2) and an order compelling supplemental answers and document production under Federal Rules of Civil Procedure 37(a)(3)(B)(iii)-(iv) based on these allegations.

G.    Keplar's counsel's alleged misconduct during depositions

As for Google's Cross-Motion, Google's request that the Court should deny Keplar's Motion for Sanctions because Google asserts that Keplar's attorney engaged in sanctionable conduct in violation of another portion of the January 9, 2024 Electronic Order [Dkt. No. 76] reflects a logical disconnect that the Court cannot accept. So, too, the requested relief that Keplar should be ordered to pay Google's fees for responding to Keplar's Motion for Sanctions – as opposed to any expenses incurred for the Cross-Motion for Sanctions raising Keplar's counsel's alleged sanctionable conduct.

After reviewing the deposition transcripts, the Court is not persuaded that, during the February 14 and 15, 2024 depositions, Keplar's counsel violated the protective order provision requiring that he "must allow the witness to fully complete

-35-

his or her answer to any question asked without interruption or other misconduct to impede the answer." Dkt. No. 76. Neither is it clear that Keplar's counsel violated the provision that "any person prohibited from reviewing a document marked 'Attorneys Eyes Only' must leave the deposition before the document is revealed, before questions about the document are asked, and before the document is introduced as an exhibit." *Id.* The instance to which Google points suggests that, if anything, Keplar's counsel was insufficiently attentive to whether he was asking questions about an AEO-restricted document with Mr. Keplar present.

Keplar's counsel likewise acknowledged on the record at the deposition that he was determined to begin asking questions at the time Google's counsel had said she would return from a restroom break. The Court cannot read the record as supporting allegations that Keplar's counsel intended to engage in ex parte communications with Mr. Moyer. Rather, this appears to fall in line with Google's complaints regarding Keplar's counsel's agreeing to restroom break. In short, counsel need to show each other patience, grace, and courtesy to an extent that one largely looks for in vain in these deposition transcripts.

But, even to the extent that Keplar's counsel may have violated provisions of the January 9, 2024 protective order, as with Google's requests for sanctions denying Keplar's sanctions motion or requiring him to pay its fees for responding to that motion, the Court finds no basis to order as a sanction that Keplar be prevented from taking any further depositions in this action as he has requested in his Motion for Sanctions.

III.   **A Court-monitored and limited continued corporate representative deposition is the least severe and most appropriate sanction.**

The Court turns, then, to what are appropriate sanctions here.

Keplar's counsel's referring to an AEO-designated document in Mr. Keplar's presence and beginning questioning of Mr. Moyer before Google's counsel returned from a restroom break and perhaps being uncharitable in agreeing to those breaks – even if violative of the January 9, 2024 protective order's terms – do not rise to the level of Rule 37(b)(2) violations of the January 9, 2024 Electronic Order possibly warranting anything more than an award of partial fees for Google's filing the Cross-Motion for Sanctions.

But the Court finds that the interests of justice do not support, under Rule 37(b)(2)(C), shifting any expenses incurred in drafting and filing the Cross-Motion for Sanctions when, separately, the Court would be equally justified in awarding Keplar, under Rule 37(b)(2)(C), an equivalent portion of his expenses incurring in drafting and filing his Motion for Sanctions as to Google's limiting Ms. Piazza's corporate representative testimony as to the second ordered Rule 30(b)(6) topic. In short, one or more applications for attorneys' fees would, under the circumstances here, come at an unacceptable cost in judicial time, and the circumstances before the Court make awarding expenses under Rules 37(a)(5) or 37(b)(2)(C) to either party unjust.

But the Court is mindful of another court's admonition in a similar sanctions context. In *Redwood v. Dobson*, 476 F.3d 462 (7th Cir. 2007), a panel of the United

States Court of Appeals for the Seventh Circuit explained that "[m]utual enmity does not excuse the breakdown of decorum that occurred at [a witness's] deposition" in that case but that, "[i]nstead of declaring a pox on both houses, the district court should have used its authority to maintain standards of civility and professionalism." *Redwood*, 476 F.3d at 469.

The panel offered the important reminder that "[i]t is precisely when animosity runs high that playing by the rules is vital. Rules of legal procedure are designed to defuse, or at least channel into set forms, the heated feelings that accompany much litigation. Because depositions take place in law offices rather than courtrooms, adherence to professional standards is vital, for the judge has no direct means of control." *Id.* at 469-70.

Consistent with that advice, the Court will, on these competing sanctions motions, enforce the requirements of both its own orders and the Federal Rules.

Google's counsel has now twice read the scope of the relief that the Court ordered in its January 9, 2024 Electronic Order granting in part and denying in part Keplar's Motion to Compel more narrowly than the order's language provides.

Google's counsel made clear during the February 14, 2024 emergency telephone conference Google's displeasure with the scope of that order as written and as clarified by the Court during the conference. That misreading was rendered harmless by counsel's seeking clarification during the February 14, 2024 emergency telephone conference, as Keplar acknowledges. *See* Dkt. No. 103 at 1 n.2.

-38-

But Google's counsel also misread the Court's ordering language regarding the second Rule 30(b)(6) topic. And the language of the Court's order should have prompted Google to at least seek clarification before preparing and presenting its corporate representative to testify only "regarding the identity and circumstances of separation, if any, of so-called Level 8 employees who were employed as directors (the same level as Keplar) concurrently with Keplar in in the Financial Services Industry vertical of the Google Cloud sales organization of which Keplar was a part" and correspondingly limiting its document production and interrogatory answers.

In these circumstances, the just and proper outcome here under the Federal Rules is to require the continued deposition of Google's corporate representative witness, Yolande Piazza, for two more hours and limited to the second ordered Rule 30(b)(6) topic as ordered in the January 9, 2024 Electronic Order [Dkt. No. 76] – after Google supplements it its document production and interrogatory answers consistent with the parties' agreement reported in the Joint Notice [Dkt. No. 83].

Google will be responsible for paying for the court reporter for this limited continued corporate representative deposition, which will again take place over Zoom.

Google's Cross-Motion for Sanctions suggests that Keplar should be required to pay for an attorney-mediator (or other Court-designated intermediary) to attend this deposition to confirm Keplar's counsel's compliance with the January 9 protective order. But that would involve more expense and trouble that is warranted here.

Rather, the Court orders that the deposition of Yolande Piazza as Google's corporate representative will be continued for no more than 2 hours on Monday, March 18, 2024 beginning at a mutually agreeable time no earlier than 10:00 a.m. Central Time, and the undersigned will sign on to the Zoom deposition and, with the undersigned's camera off unless called on to speak, will monitor the deposition's conduct.

The Court will not rule on objections, if any, as they are made. That is not Rule 30(c)(2) or, more generally, depositions work, and the parties here are not, under the circumstances, entitled to special treatment or any kind of reward through this extraordinary relief that the Court feels compelled to provide. But the undersigned will be present in the event that the parties have a dispute regarding the scope of the deposition and to ensure compliance with Rule 30 and the January 9 protective order.

Counsel must send an email to Horan_Orders@txnd.uscourts.gov by March 14, 2024, providing the time and Zoom log-in information for the March 18, 2024 deposition.

In connection with this continued deposition, Keplar's and Google's counsel are each admonished to comply with the terms of the January 9 protective order and with Rule 30's mandates, including Rule 30(c)(2)'s limitations on the manner of objecting.

The Court also orders Google to supplement its document production and interrogatory answers, consistent with the Court's orders, in advance of this

Court-monitored and limited continued corporate representative deposition and by no later than March 14, 2024.

And the Court finds that no other alleged sanctionable conduct warrants any additional relief against Keplar or Google under the Federal Rules or the Court's inherent powers. This limited relief should draw discovery in this case to a close.

## Conclusion

For the reasons and to the extent explained above, the Court grants in part and denies in part Plaintiff Jeffrey Keplar's Emergency Motion to Enforce Order on Motion to Compel and Extend Discovery Period as Necessary, and to Compel Responses to Interrogatories, Requests for Admission and Document Requests [Dkt. No. 79], Plaintiff Jeffrey Keplar's Motion for Sanctions [Dkt. No. 88], and Defendant Google, LLC's Cross-Motion for Sanctions [Dkt. No. 101].

SO ORDERED.

DATED: March 8, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE

-41-